## STANTON CARTER *v.* McCLAUGHRY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 251. Argued December 3, 4, 1901.—Decided January 6, 1902.

The rule reiterated, that civil tribunals will not revise the proceedings of courts martial, except for the purpose of ascertaining whether they had jurisdiction of the person and of the subject matter, and whether though having such jurisdiction, they have exceeded their powers in the sentences pronounced.

Where the punishment on conviction of any military offence is left to the discretion of the court martial, the limit of punishment, in time of peace, prescribed by the President, applies to the punishment of enlisted men only.

Where the jurisdiction of the military court has attached in respect of an officer of the army, this includes not only the power to hear and determine the case, but the power to execute and enforce the sentence.

Where the sentence is rendered on findings of guilty of several charges with specifications thereunder, and the President, as the reviewing authority, has disapproved of the findings of guilty of some of the specifications, but approved the findings of guilty of a specification or specifications under each of the charges, and of the charges, and the President does not think proper to remand the case to the court martial for revision, or to mitigate the sentence, or to pardon the accused, but approves the sentence, the judgment so rendered cannot be disturbed on the ground that the disapproval of some of the specifications vitiated the sentence.

In this case, Charge I was "Conspiring to defraud the United States, in violation of the 60th article of war." Charge II was "Causing false and fraudulent claims to be made against the United States in violation of the 60th article of war." These are separate and distinct offences and the military court was empowered to punish the accused as to one by fine and as to the other by imprisonment.

Charge III was "Conduct unbecoming an officer and a gentleman, in violation of the 61st article of war." This is not the same offence as the offences charged under the 60th article of war. But in view of articles 97 and 100, conviction of Charges I and II involves conviction under article 61, and the officer may be dismissed on conviction under either article.

Charge IV was "Embezzlement, as defined in section 5488 of the Revised Statutes, in violation of the 62d article of war." *Held :* (*a*) That the specified crime was not mentioned in the preceding articles. That the offences of which the accused was convicted under the 60th article were distinct from the acts prohibited by section 5488. (*b*) That the crime alleged in this charge was not covered by subdivision 9 of article 60, because the embezzlement charged was not of money "furnished or intended for the military service." (*c*) Nor was the money applied to a purpose prescribed by law, and it was for the court martial to determine whether the crime charged was "to the prejudice of good order and military discipline."

THIS was a petition for the writ of *habeas corpus* filed on behalf of Oberlin M. Carter in the Circuit Court of the United States for the District of Kansas, October 17, 1900, on which the writ was issued returnable October 26.

The petition alleged that Carter was imprisoned and restrained of his liberty by the warden of the United States prison at Fort Leavenworth, Kansas, by virtue of a sentence imposed upon him by a general court martial of the United States, approved by the Secretary of War, and approved and confirmed by the President of the United States on the 29th day of September, 1899.

That the warrant under which the warden detained petitioner was an order from the headquarters of the army, that is to say, General Orders No. 172, dated September 29, 1899, and set forth at length.

From this it appeared that Captain Oberlin M. Carter, Corps of Engineers, United States Army, was arraigned and tried before a general court martial on four charges with specifications under each.

To the first specification of Charge I; the first, second, third, fourth and fifth specifications of Charge II; the first, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth and twenty-first specifications of Charge III; and the second specification of Charge IV, he pleaded the statute of limitations, the one hundred and third article of war, and the plea was sustained by the court. To the charges and the other specifications he pleaded not guilty, and was found not guilty on the eighth, tenth, twelfth and twenty-third specifications under Charge III.

Omitting the above specifications and abbreviating those disapproved by the President as stated hereafter, the charges and specifications were as follows:

Charge I.—"Conspiring to defraud the United States, in violation of the 60th article of war."

Specification II.—" In that Captain Oberlin M. Carter, Corps of Engineers, United States Army, devising and intending to defraud the, United States and to aid the Atlantic Contracting Company, a corporation, and John F. Gaynor, William T. Gaynor, and Edward H. Gaynor, and Anson M. Bangs, and divers other persons, all of whom were likewise with him, the said Carter, devising and intending to defraud the United States, did, with the corporation and persons named, unlawfully combine and conspire to defraud the United States of divers large sums of money by aiding the said The Atlantic Contracting Company to obtain the allowance and payment of certain false and fraudulent claims hereinafter described; and in pursuance of the said conspiracy the said Oberlin M. Carter, in the months of June, July, and August, September and October, 1896, being an officer of the United States in charge of the river and harbor district usually called the Savannah district, and of the improvement by the United States of. rivers and harbors in said district, did, with the knowledge and consent of the said other parties named, so advertise for proposals for contracts for certain works of improvement in the harbor of Savannah, Georgia, in said district, and so manage and conduct said advertising, and the matter of giving out information in regard to the contract to be let, and the matter of receiving proposals and award-

ing the contract, as to enable the said The Atlantic Contracting Company to secure the contract for said work, and to have the same entered into by the United States with it October 8, 1896; and in further pursuance of the said conspiracy the said The Atlantic Contracting Company afterwards, to wit, from about the 8th day of October, 1896, to July 31, 1897, did furnish and put into said work certain mattresses, stone and other material which were different in kind and character from the mattresses, stone and other material contracted for in said contract, and very much less costly to the said The Atlantic Contracting Company as well as of less value to the United States; which said mattresses, stone, and other material so furnished and put into the work the said Captain Carter, in further pursuance of said conspiracy, did receive and accept, and cause to be received and accepted, for the United States, as and for the mattresses, stone, and other material contracted for; and did, on or about July 6, 1897, cause to be paid, out of the moneys of the United States, $230,749.90 to the said The Atlantic Contracting Company on account of the said furnishing and delivery of the same, and as if the said mattresses, stone and other material had been such as were stipulated for in the contract, and at the same rate, cost and price as if they had been.

"And in further pursuance of the said conspiracy the said Captain Carter, about June, July, August, September and October, 1896, did advertise for proposals for a contract for improving Cumberland Sound, Georgia, in said river and harbor district, and so manage and conduct the matter of such advertising, and the matter of giving out information in regard to the contract to be let, and the matter of receiving proposals and awarding the contract, as to enable the said The Atlantic Contracting Company to secure the contract for said work and to have the same entered into by the United States with it October 8, 1896; and in further pursuance of the said conspiracy the said The Atlantic Contracting Company, from about the 8th day of October, 1896, to the 31st day of July, 1897, did furnish and put into said work certain mattresses, stone and other material which were different in kind and character from the mattresses, stone and other materials contracted for in said

contract, and very much less costly to the said The Atlantic Contracting Company, as well as of less value to the United States; which said mattresses, stone and other material so furnished and put into the work the said Captain Carter, in further pursuance of said conspiracy, did receive and accept, and cause to be received and accepted, for the United States, as and for the mattresses, stone and other material contracted for; and did, on or about July 6, 1897, cause to be paid, out of the moneys of the United States, $345,000.00 to the said The Atlantic Contracting Company, on account of said furnishing and delivery of the same, and as if the said mattresses, stone and other material had been such as were stipulated for in the contract and at the same rate, cost and price as if they had been.

"This on the 6th day of June, 1896, and thereafter to the 1st day of August, 1897."

Charge II.—"Causing false and fraudulent claims to be made against the United States, in violation of the 60th article of war."

Specification VI.—"In that Captain Oberlin M. Carter, Corps of Engineers, United States Army, being at the time the officer in local charge of river and harbor improvements in the Savannah river and harbor district, did cause to be made certain false and fraudulent claims against the United States and in favor of the Atlantic Contracting Company, a corporation, knowing the same to be false and fraudulent, to wit: The claim represented by the following voucher, submitted by the said Captain Carter with his accounts and marked 'Appropriation for improving harbor at Savannah, Georgia:'

"Voucher No. 8, $230,749.90, July, 1897; and the claim represented by the following voucher submitted by the said Captain Carter with his accounts, and marked 'Appropriation for improving Cumberland Sound, Georgia and Florida:'

"Voucher No. 9, $345,000.00, July, 1897; which said false and fraudulent claims the said Captain Carter caused to be made by knowingly permitting the said Atlantic Contracting Company, which had previously entered into contracts, dated October 8, 1896, to furnish the United States certain mattresses,

stone and other material, of specified kinds and qualities, for constructing works in said river and harbor district, to furnish and put into said works, mattresses, stone and other material different from, inferior to, cheaper and of less value to the United States than those contracted for; and by receiving and accepting and paying for the same as of the kinds and qualities contracted for, and by falsely certifying to the correctness of the said vouchers, well knowing that the mattresses, stone and other material charged for in said vouchers as having been furnished, had not in fact been furnished; each of the said claims having been made in or about the month named in the above description of the voucher relating to it."

Specification VII.—In that the accused caused to be entered on a government pay roll the names of sundry persons as laborers, and caused to be paid to them certain sums for services as laborers, whereas none of such persons had rendered services as laborers, and the accused knew such claims were false and fraudulent.

Specification VIII.—For fraudulently allowing an account of $121.60 of the Atlantic Contracting Company against the United States for piling in repairing the Garden Bank training wall.

Specification IX.—For fraudulently allowing an account of $384 to the Atlantic Contracting Company for pile work.

Specification X.—For fraudulently allowing an amount of $108.80 to the Atlantic Contracting Company for pile dams.

Charge III.— " Conduct unbecoming an officer and a gentleman, in violation of the 61st article of war."

Specification II.—" In that Captain Oberlin M. Carter, Corps of Engineers, United States Army, being the officer in local charge for the United States of river and harbor improvements in the Savannah River and harbor district, did wilfully and knowingly cause the following amounts to be paid out of the moneys of the United States subject to his order and control as officer in charge of said improvements to the Atlantic Contracting Company, a corporation; the accounts on which the same were paid being false, and the amounts paid not being due or owing from the United States to the said company, or to any

one, and he, the said Captain Carter, well knowing this to be the case ; the said accounts and amounts paid and the payments being those designated by the following voucher (and the entries therein and endorsements thereon), submitted by the said Captain Carter with his accounts and marked 'Appropriation for improving harbor at Savannah, Georgia':

"Voucher No. 8, $230,749.90, July, 1897; and the one indicated and designated by the following voucher (and the entries therein and endorsements thereon), submitted by the said Captain Carter with his accounts and marked 'Appropriation for improving Cumberland Sound, Georgia and Florida':

"Voucher No. 9, $345,000.00, July, 1897 ; each of the said payments having been caused to be made on or about July 6, 1897, by the said Captain Carter drawing and delivering a check as such officer in charge of river and harbor improvements, by which the payment was ordered and directed to be made out of moneys of the United States under his control as such officer."

Specification III.—For making a false statement to the Chief of Engineers as to new soundings for work in Savannah harbor, with intent to deceive.

Specification IV.—For falsely entering on the pay roll the names of certain persons as laborers to an amount of $29.50.

Specification V.—For falsely certifying as correct an account of the Atlantic Contracting Company for $121.60.

Specification VI.—For falsely certifying as correct an account of the Atlantic Contracting Company for $384.

Specification VII.—For falsely certifying as correct an account of the Atlantic Contracting Company for $108.80.

Specification IX.—For endorsing a certain false statement on a letter from the Chief of Engineers as to rentals on property proposed to be acquired by the United States at Savannah.

Specification XI.—For failing to account for the sum of $132.10, money of the United States, received by the accused from Alfred Hirt.

Specification XXII.—For making false reports as to his absence from his station.

Charge IV.—"Embezzlement, as defined in section 5488, Revised Statutes of the United States, in violation of the 62d Article of war."

Specification I.—"In that Captain Oberlin M. Carter, Corps of Engineers, United States Army, being the officer in charge for the United States of river and harbor improvements in the Savannah river and harbor district, and, as such officer, in charge of said improvements, being a disbursing officer of the United States, and having entrusted to him large amounts of public money of the United States, did wilfully and knowingly apply for a purpose not authorized by law large sums of the said moneys so entrusted to him, by wilfully and knowingly causing the amounts hereinafter named to be paid out of the said moneys which were subject to his order and control as such officer in charge of said improvements; the accounts on which the same were being paid being false, the amounts paid not being due or owing from the United States to the parties paid, or to any one, and he, the said Captain Carter, well knowing this to be the case; the said accounts, the amounts paid, and the payments being those designated by the following voucher (and the entries therein and the endorsements thereon), submitted by the said Captain Carter with his accounts and marked 'Appropriation for improving harbor at Savannah, Georgia:'

"Voucher No. 8 ($230,749.90), July, 1897; and the one indicated and designated by the following voucher (and the entries therein and endorsements thereon), submitted by the said Captain Carter with his accounts and marked 'Appropriation for improving Cumberland Sound, Georgia and Florida:'

"Voucher No. 9 ($345,000.00), July, 1897; each of the said payments having been caused to be made on or about July 6, 1897, by the said Captain Carter drawing and delivering a check as such officer in charge of river and harbor improvements, by which the payment was ordered and directed to be made out of moneys of the United States under his control as such officer."

The court martial found the accused guilty of the second specification under Charge I, "except the words, 'and other material' and interpolating the word 'and' between the words 'mattresses' and 'stone' wherever those words occur in the specification, of the excepted words not guilty and of the interpolated word guilty;" and guilty of the charge; guilty of the

sixth specification under Charge II, "except of the words 'and other material' where they occur the second and third time and interpolating the word 'and' between the words 'mattresses,' and 'stone' where they occur the second and third time; of the excepted words not guilty.; of the interpolated word guilty;" guilty of the seventh, eighth, ninth and tenth specifications, and guilty of the charge; guilty of the second, third, fourth, sixth, seventh, ninth, eleventh and twenty-second specifications under Charge III, of the fifth specification, "except of the words 'the articles have been' and of the excepted words not guilty;" and not guilty of the eighth, tenth, twelfth and twenty-third specifications; and guilty of the charge; guilty of the first specification under Charge IV, and guilty of the charge.

The general order then set forth the sentence and subsequent action as follows:

## "*Sentence.*

"And the court does therefore sentence the accused, Captain Oberlin M. Carter, Corps of Engineers, United States Army, 'to be dismissed from the service of the United States, to suffer a fine of five thousand dollars, to be confined at hard labor at such place as the proper authority may direct for five years, and the crime, punishment, name and place of abode of the accused to be published in the newspapers in and about the station and in the State from which the accused came, or where he usually resides.'

"The record of the proceedings of the general court martial in the foregoing case of Captain Oberlin M. Carter, Corps of Engineers, having been submitted to the President, the following are his orders thereon: .

"The findings of the court martial in the matter of the fore-. going proceedings against Captain Oberlin M. Carter, Corps of Engineers, U. S. Army, are hereby approved as to all except the following:

"'Charge 2. Specifications seven, eight, nine and ten.

"'Charge 3. Specifications three, four, five, six, seven, nine, eleven and twenty-two, which are disapproved. And the sen-

tence imposed by the court martial upon the defendant, Oberlin M. Carter, is hereby approved.

　　　　　" ' Elihu Root, *Secretary of War.*

　　　　　　　" ' Executive Mansion,
　　　" ' Washington, D. C., September 29, 1899.
" ' Approved and confirmed.

　　　　　　　· " ' William McKinley.'

" By direction of the Secretary of War, Captain Oberlin M. Carter, Corps of Engineers, ceases to be an officer of the army from this date, and the United States penitentiary, Fort Leavenworth, Kansas, is designated as the place for his confinement, where he will be sent by the commanding general, Department of the East, under proper guard.

" By command of Major General Miles:

　　　　　　" H. C. Corbin, *Adjutant General.*"

The petition averred that said Carter, in pursuance of the sentence, had been dismissed from the Army of the United States and the order of dismissal served upon him; that the crime, punishment, name and place of abode of said Carter had been published in the newspapers in and about his station and in and about the State whence he came and where he usually resided; and that said Carter had paid to the United States the fine of five thousand dollars imposed by the sentence. And that said Carter, " having been cashiered the Army, having suffered degradation, and having paid the fine imposed, as above set forth, his imprisonment and detention are contrary to law, are in violation of the Constitution of the United States, and are illegal and without warrant of law, for the following reasons, that is to say: "

First. That there was no evidence delivered before the court martial which tended to show that any crime whatever had been committed by said Carter; but, on the contrary, all the evidence taken together affirmatively showed that Carter was wholly innocent of any wrongdoing; " and that in imposing the sentence above set out said court martial acted beyond its jurisdiction, and said sentence was and is wholly void." Petitioner stated that he had no copy of the evidence, but that he

attached a copy of an abstract of all the evidence adduced before the court martial.

Second. That the finding of said Carter guilty of Charge IV, and the specification thereunder, and the imposing of sentence on him as for a violation of the sixty-second article of war, were and each of them was wholly illegal and void, for that; (*a*) It was shown by the evidence, and appeared from the charges and specifications, that the two sums of money alleged to have been paid out by Carter "for a purpose not authorized by law," were paid out by him under and in accordance with the specifications of two certain contracts for the improvement of Savannah harbor and Cumberland Sound, which contracts were entered into pursuant to the act of Congress of June 3, 1896: (*b*) It appeared from the specification that the acts described therein were not in violation of the sixty-second article of war and were not cognizable by a court martial under that article, but if justiciable at all by the court martial, were justiciable under the sixtieth article of war.

Third. That the imprisonment and detention were illegal and contrary to article 102 prohibiting a second trial for the same offence, and contrary to the Fifth Amendment to the Constitution of the United States in this: (*a*) That it appeared from the charges and specifications and also from the evidence, that the payment of the two checks drawn by Carter and described in each of the specifications under which he was convicted, were the only basis of each of the four charges, and that the single act of drawing the two checks had been carved up into four distinct and different crimes, and a punishment assessed on each. (*b*) That the sentence was beyond the powers of the court martial and void, for that under the 60th article of war the court martial was authorized to inflict the punishment of a fine or imprisonment or such other punishment as it might adjudge. (*c*) That under the 61st article of war, the violation of which was laid in Charge III, the court martial had jurisdiction to inflict the judgment of dismissal from the army only. (*d*) That the facts set out in the specifications under Charges I, II and IV, respectively, brought the offence therein described under the 60th article of war, under which the court

martial had jurisdiction only to inflict a fine or an imprisonment or some other punishment, in the alternative, and not cumulatively.

Fourth. That the punishment of fine and imprisonment were and each of them was beyond the power of the court martial to inflict, because the same were imposed after Carter had ceased to be an officer of the Army of the United States, and after he had ceased to be subject to the jurisdiction of the court martial.

Fifth. That the punishment of imprisonment was beyond the powers of the court martial and void in this: That under and by virtue of an act of Congress approved September 27, 1890, the President, by an order dated March 20, 1895, fixed the maximum punishment for a violation by an enlisted man in the Army of the United States of the 60th article of war, and for the violation by such person of the 62d article of war, by embezzlement of more than one hundred dollars, at a term of four years' confinement at hard labor, under each article; and that thereafter, on October 31, 1895, (prior to these proceedings,) the President, in accordance with the act of Congress, prescribed that said maximum limit should extend to all such violations, whether by officers or enlisted men of the Army.

Sixth. That the sentence was wholly void in this—

"That said court martial found the said Captain Carter guilty of charge one and of specification two thereunder; of charge two and specifications six, seven, eight, nine and ten thereunder; of charge three and specifications two, three, four, five, six, seven, nine, eleven and twenty-two thereunder; and of charge four and specification one thereunder; and thereupon sentenced the said Carter to be punished as hereinabove set forth; but the President of the United States disapproved the findings of said court martial as to specifications seven, eight, nine and ten, under charge two, and specifications three, four, five, six, seven, nine, eleven and twenty-two, under charge three, and approved the said sentence as originally fixed by the said court; the said several specifications so approved and the said several specifications so disapproved, charging several and distinct offences, growing out of several, distinct and disconnected

transactions, said several offences charged not being of the same class of crimes.

"That the sentence thus confirmed by the said President of the United States was not the sentence of said court martial, and was not in mitigation or commutation of such sentence, but was for the offences of which said Carter was finally determined to be guilty, in excess of the sentence imposed by said court martial."

The petition further alleged that October 2, 1899, said Carter, by Abram J. Rose, applied to the United States Circuit Court for the Southern District of New York for a writ of *habeas corpus*, which writ was on October 20, 1899, dismissed; that on January 24, 1900, the decision of the Circuit Court was affirmed by the United States Circuit Court of Appeals for the Second Circuit; that thereafter the petitioner last named prosecuted a writ of error to the Circuit Court and a certiorari out of the Supreme Court of the United States, but the Supreme Court dismissed the appeal and writ of error. Copies of the opinions in each of these courts were attached. Petitioner further averred that this application was made on the same evidence as in the application to the Circuit Court for the Southern District of New York, to wit, the evidence adduced before the court martial.

By amendment, a further allegation was added to the petition to the effect that on December 9, 1899, said Carter and Benjamin D. Green and others were indicted in the United States Circuit Court for the Southern District of Georgia for a conspiracy to defraud the United States, a copy of which indictment was attached; "that said indictment was based on the same facts as set out in the charges and specifications, for the conviction of which by said court martial said Carter is now undergoing imprisonment—that is to say, Charge I, specification 2; Charge II, specification 6; Charge III, specification 2; and Charge IV, specification 1, as set out in the petition filed herein—and that said indictment was found after the Circuit Court of the United States for the Southern District of New York had denied the application for a writ of *habeas corpus* on October 20, 1899."

The respondent, the warden of the United States penitentiary at Fort Leavenworth, Kansas, returned to the writ that he had Oberlin M. Carter in custody, as such warden, and detained him by direction of the Secretary of War, the said Carter being under sentence of a general court martial, sentenced to be imprisoned at said penitentiary for five years, and that Carter was now in custody as aforesaid undergoing said sentence of imprisonment; that the warden was acting in the capacity of custodian of said Carter, in virtue of General Orders No. 172 of September 29, 1899, a duly authenticated copy of which was filed as part of the return; and the respondent contended that said Carter had been lawfully convicted and sentenced by the said general court martial, which had jurisdiction of the person of said Carter and of the various offences for which he was tried.

Respondent further set forth the proceedings by *habeas corpus* in the Southern District of New York, during the pendency of which the said Carter paid the fine imposed, and averred that on hearing the Circuit Court dismissed the writ, and Carter was remanded to custody, *In re Carter*, 97 Fed. Rep. 496; that thereafter the cause was carried to the Circuit Court of Appeals for the Second Circuit, and that court affirmed the final order of the Circuit Court. 99 Fed. Rep. 948. That on February 5, 1900, a petition for certiorari was submitted to the Supreme Court of the United States, which on February 26, 1900, was denied. *Carter* v. *Roberts*, 176 U. S. 684. That on the same day the application for certiorari was denied, an appeal was taken to the Supreme Court, and a writ of error sued out, to review the order of the Circuit Court in dismissing the *habeas corpus* and remanding the said Carter; and that thereafter the Supreme Court on April 23, 1900, dismissed said appeal and writ of error for want of jurisdiction. *Carter* v. *Roberts*, 177 U. S. 496. That on the mandate issuing from the Supreme Court, April 24, 1900, to the Circuit Court, the Circuit Court, on April 25, 1900, entered judgment, and remanded Carter to the custody from which he was produced for the purpose of having the sentence executed. Duly authenticated transcripts of these various proceedings and copies of accompanying briefs were made parts of the return.

That in accordance with the sentence Carter was received at the penitentiary on the 27th day of April, and had been there until the present date, undergoing the same.

Respondent objected in conclusion to the admission by the court of the abstract of the evidence alleged to have been taken before the court martial and made part of petitioner's petition because the record of the whole proceedings of a court martial is required by law to be reduced to writing and deposited in the office of the Judge Advocate of the Army, and this record or a copy thereof duly authenticated is the best evidence; and even if produced, would be inadmissible for the purpose for which it was sought to be introduced, as the courts in *habeas corpus* proceedings cannot examine the evidence for the purpose of determining the guilt or innocence of the party convicted; and this case presented no exception justifying departure from this rule, as General Orders No. 172 afforded all the information necessary to dispose of the case.

The record of the Circuit Court shows that the matter came on to be heard on November 23, 1900, on petitioner's "oral motion to discharge the said Oberlin M. Carter, based upon the averments of respondent's return, no evidence having been offered or considered by the court." On December 10, 1900, it was ordered by the court "that the writ of *habeas corpus* herein be discharged; and it is further ordered that the said Oberlin M. Carter be remanded to the custody of Robert W. McClaughry, warden of the United States penitentiary at Fort Leavenworth, Kansas." The opinion of the court was delivered by Hook, J., in which Thayer, Circuit Judge, concurred. 105 Fed. Rep. 614.

This appeal was then prosecuted and errors duly assigned. Errors were also specified in appellant's brief, in substance as follows:

1. That the finding of "guilty" under Charge IV and its specification was void inasmuch as the specification was wrongly laid under Article 62, because, (*a*) the money was applied to a purpose prescribed by law; (*b*) and the crime charged was not "to the prejudice of good order and military discipline;" and inasmuch as the crime charged was "mentioned in the foregoing

articles of war," being covered by paragraphs 1, 4 and 9 of Article 60.

2. The finding under Article 62 being void, that the sentence is in violation of the Fifth Amendment of the Constitution, because it was greater than could be imposed for any alleged crime taken singly, and there were only two separate crimes charged, viz., conspiracy and paying fraudulent claims, while there were three several penalties imposed, viz., dismissal, fine and imprisonment. Dismissal and fine had been discharged, and the third, imprisonment, is illegal.

3. That the entire sentence is illegal and void because the President having disapproved the conviction as to certain offences and having ordered the original sentence to stand, such sentence ceased to be the sentence of the court martial.

4. The imprisonment is illegal because inflicted after Carter ceased to be an officer of the Army.

5. The sentence of imprisonment is void because in excess of the maximum allowed by law.

6. The court martial had no jurisdiction to try Carter "because it stands admitted that no evidence whatever was adduced tending to show his guilt."

*Mr. Frank P. Blair* and *Mr. H. G. Stone* for appellant.

*Mr. John W. Clous* and *Mr. Solicitor General* for appellee.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

In *Carter* v. *Roberts*, 177 U. S. 496, it was said : " The eighth section of article I of the Constitution provides that the Congress shall have power 'to make rules for the government and regulation of the land and naval forces,' and in the exercise of that power Congress has enacted rules for the regulation of the army known as the Articles of War. Rev. Stat. § 1342. Every officer, before he enters on the duties of his office, subscribes to these articles, and places himself within the power of courts martial to pass on any offence which he may have committed in contravention of them. Courts martial are lawful tribunals,

with authority to finally determine any case over which they have jurisdiction, and their proceedings, when confirmed as provided, are not open to review by the civil tribunals, except for the purpose of ascertaining whether the military court had jurisdiction of the person and subject matter, and whether, though having such jurisdiction, it had exceeded its powers in the sentence pronounced."

Jurisdiction over the person is conceded, but it is argued that there was no jurisdiction over the subject matter because the evidence affirmatively showed that no crime whatever had been committed. Whether the sentence of a military court, approved by the reviewing authority, is open to attack in the civil courts on such a ground, is a question which does not arise on this record. The motion to discharge conceded the return to be true, and if the return showed sufficient cause for detention, the Circuit Court was right in dismissing the writ, and its final order to that effect must be affirmed. No evidence was adduced in or considered by the Circuit Court, and none is before us, nor is any inquiry into the innocence or guilt of the accused permissible.

Was then the sentence void for want of power to pronounce and enforce it?

The particular ground on which the appeal directly to this court may be rested is that the case involved the construction or application of the Constitution in the contention that by the sentence petitioner was twice punished for the same offence.

That question was put forward in the petition and manifestly argued on the return. The Circuit Court states, in its opinion, that "it is contended in behalf of Carter that his imprisonment is in violation of the Constitution of the United States, and is otherwise illegal and without warrant of law." And, indeed, the application of the Constitution would seem to be necessarily involved if the sentence were held invalid on other grounds.

Holding the case to be properly before us, it will be more convenient to examine the constitutional point specially raised, after we have considered some of the other objections to the sentence.

One of these objections is that the sentence exceeded the

maximum punishment fixed by the President, under the act of Congress approved September 27, 1890, (26 Stat. 491, c. 998), because the term of imprisonment imposed was five instead of four years.

. That act provides that "whenever by any of the articles of war for the government of the Army the punishment on conviction of any military offence is left to the discretion of the court martial the punishment therefor shall not, in time of peace, be in excess of a limit which the President may prescribe."

. February 26, 1891, the President made an executive order in limitation of punishment, which was promulgated to the Army in General Orders No. 21, February 27, 1891, and therein it was said : "In accordance with an act of Congress of September 27, 1890, the following limits to the punishment of enlisted men, together with the accompanying regulations, are established for the government in time of peace for all courts martial and will take effect thirty days after this order." This executive order was amended by the President March 20, 1895, and again amended March 30, 1898, and in 1901. In neither of these executive orders were its provisions extended to commissioned officers, and they solely related to the cases of enlisted men. It is true that clause 938 of the army regulations promulgated October 31, 1895, provides : " Whenever by any of the articles of war punishment is left to the discretion of the court, it shall not, in time of peace, be in excess of a limit which the President may prescribe. The limits so prescribed are set forth in the Manual for Courts Martial, published by authority of the Secretary of War." But we do not find in the Manual any attempt to extend the limitations to others than enlisted men ; and it is evident that a limit on discretion in punishment to be imposed by the President only can only have such operation as he may affirmatively prescribe.

It is further urged that the punishments of fine and imprisonment were illegal because inflicted after Captain Carter had ceased to be an officer of the Army.

The different provisions of the sentence took effect concurrently while the accused was under the control of the military authorities of the United States as a commissioned officer of

the Army.   The date of the order of dismissal, of the infliction of the fine and of the beginning of the imprisonment were the same date.

The accused was proceeded against as an officer of the Army, and jurisdiction attached in respect of him as such, which included not only the power to hear and determine the case, but the power to execute and enforce the sentence of the law. Having being sentenced, his status was that of a military prisoner held by the authority of the United States as an offender against its laws.

He was a military prisoner though he had ceased to be a soldier ; and for offences committed during his confinement he was liable to trial and punishment by court martial under the rules and articles of war.   Rev. Stat. § 1361.

It may be added that the principle that where jurisdiction has attached it cannot be divested by mere subsequent change of status has been applied as justifying the trial and sentence of an enlisted man after expiration of the term of enlistment, *Barrett* v. *Hopkins*, 7 Fed. Rep. 312 ; and the execution of sentence after the lapse of many years and the severance of all connection with the Army.   *Coleman* v. *Tennessee*, 97 U. S. 509.

In the latter case this court held, at October term, 1878, that a soldier who had been convicted of murder and sentenced to death by a general court martial in 1865, but whose sentence had not been executed, might " be delivered up to the military authorities of the United States, to be dealt with as required by law."   In this matter it was subsequently advised by Attorney General Devens that the death sentence might legally be carried into effect notwithstanding the fact that the soldier had in the meantime been discharged from the service, under the circumstances detailed, but he recommended that the sentence be commuted, and this recommendation was followed. 16 Op. Att. Gen. 349.

In *Ex parte Mason*, 105 U. S. 696, where the accused was sentenced by a general court martial to dishonorable discharge, forfeiture of pay, and eight years' imprisonment in the Albany penitentiary, an application for release on *habeas corpus* was denied, and the sentence held to be legal.

Another objection strenuously insisted on is that the sentence ceased to be the sentence of the court martial because of the disapproval of certain specifications by the President.

The 65th article of those enacted by Congress, April 10, 1806, (2 Stat. 359, c. 20,) provided: " But no sentence of a court martial shall be carried into execution until after the whole proceedings shall have been laid before the officer ordering the same, or the officer commanding the troops for the time being." In the Revised Statutes this part of the 65th article of war was made section 104, and read: " No sentence of a court martial shall be carried into execution until the whole proceedings shall have been approved by the officer ordering the court, or by the officer commanding for the time being." By the act of July 27, 1892 (27 Stat. 277, c. 272,) the 104th section was amended so as to read: " No sentence of a court martial shall be carried into execution until the same shall have been approved by the officer ordering the court, or by the officer commanding for the time being."

The original article required *the whole proceedings to be laid* before the reviewing authority ; the Revised Statutes, that *the whole proceedings should be approved ;* the act of July 27, 1892, that *the sentence* should not be carried into execution until *it was approved.* From this legislation it appears that the approval of the sentence and not of the whole proceedings is now the prerequisite to carrying the sentence into execution, and this is in harmony with articles 105, 106, 107 and 108.

In *Claassen* v. *United States,* 142 U. S. 140, 146, it was said : " In criminal cases, the general rule, as stated by Lord Mansfield before the Declaration of Independence, is ' that if there is any one count to support the verdict, it shall stand good, notwithstanding all the rest are bad.' *Peake* v. *Oldham,* Cowper, 275, 276 ; *Rex* v. *Benfield,* 2 Bur. 980, 985. See also *Grant* v. *Astle,* 2 Doug. 722, 730. And it is settled law in this court, and in this country generally, that in any criminal case a general verdict and judgment on an indictment or information containing several counts cannot be reversed on error, if any one of the counts is good and warrants the judgment, because, in the absence of anything in the record to show the contrary, the pre-

sumption of law is that the court awarded sentence on the good count only."

In *Ballew* v. *United States*, 160 U. S. 187, where the indictment embraced two counts, each setting up a distinct offence, the court instructed the jury that if they considered the defendant guilty on one count and innocent on the other, they should so find ; and that if they found him guilty on both counts, that they should return a general verdict of guilty. A general verdict of guilty was returned, and judgment rendered thereon.

This court held that error had been committed in the conviction as to the first count but none in the conviction upon the other, and as the general verdict covered both, the judgment was reversed under the statute in that behalf and the cause remanded with instructions to enter judgment on the second count.

In *Putnam* v. *United States*, 162 U. S. 687, where there was a conviction on two counts and the sentence imposed was distinct and separate as to each count, but was made concurrent so that the entire amount of punishment imposed would be undergone if the judgment were sustained under either count, error being found in the conviction as to one of them, the judgment was reversed as to that count and affirmed on the other.

We are dealing here with no matter of insufficient counts or of conviction of two offences, sustainable only as to one, but the analogies of the criminal law bear out the procedure under the military law, the rules of which determine the present contention.

That contention, after all, amounts to no more than to say that if the court martial had acquitted on the disapproved findings, it must be assumed that the sentence would have been less severe, and therefore that the President should have sent the case back or mitigated the punishment, and that because he did not, the punishment must be conclusively regarded as increased. This is wholly inadmissible when the powers vested in the ultimate tribunal are considered.

The court martial for the trial of Captain Oberlin M. Carter was convened by orders issued by the President; and he was therefore the reviewing authority, and the court of last resort.

The law governing courts martial is found in the statutory enactments of Congress, particularly the Articles of War.; in the Army Regulations; and in the customary military law. According to military usage and practice, the charge is in effect divided into two parts, the first technically called the " charge," and the second, the " specification." The charge proper designates the military offence of which the accused is alleged to be guilty. The specification sets forth the acts or omissions of the accused which form the legal constitutents of the offence. The pleading need not possess the technical nicety of indictments as at common law. " Trials by courts martial are governed by the nature of the service, which demands intelligible precision of language but regards the substance of things rather. than their form." 7 Op. Atty. Gen. 604. Not only do military usage and procedure permit of an indefinite number of offences being charged and adjudicated together in one and the same proceeding, but the rule is recognized that whenever an officer has been apparently guilty of several or many offences, whether of a similar character or distinct in their nature, charges and specifications covering them all should, if practicable, be preferred together, and together brought to trial. 1 Winthrop, 219; 22 Op. Atty. Gen. 595. And it has been repeatedly ruled by the Judges Advocate General that " a duly approved finding of guilty on one of several charges, a conviction upon which requires or authorizes the sentence adjudged, will give validity and effect to such sentence, although the similar findings on all the other charges are disapproved as not warranted by the testimony." Dig. Op. Judge Advocate General, ed. 1895, p. 696; Id. ed. 1868, pp. 343, 350.

The sentence against Captain Carter was rendered on findings of guilty of four charges and certain specifications thereunder.

It devolved on the President to approve or to disapprove the sentence. Before taking action, he referred the proceedings to the Attorney General, who submitted a careful report thereon, and recommended the disapproval of certain findings. 22 Op. 589. These related to facts of less gravity under Charges I and II than the others set up thereunder, and those under Charge

III though objectionable were not material, as dismissal was the sole punishment under that charge. The President disapproved of the findings of guilty of some of the specifications under two of the charges, and approved findings of guilty of a specification or specifications under each of the charges, and of the findings of guilty of all of the charges, and approved the sentence. He might have referred the proceedings back to the court for revision, but he was not required to do so, if in his opinion this was not necessary, and the sentence was justified by the findings which he did approve. As President he might have exercised his constitutional power to pardon, or as the reviewing authority he might have pardoned or mitigated the punishment adjudged except that of dismissal, although he had no power to add to the punishment. He did not think it proper to remand, to mitigate or to pardon. He clearly acted within his authority whether the Articles of War, the Army Regulations, or the unwritten or customary military law be considered, and the judgment he rendered cannot be disturbed on the ground suggested.

We are brought then to consider the two propositions on which much of the stress of the argument was laid.

First. That the finding of guilty of charge 4 and its specification was beyond the powers of the court martial;

Second. That if that finding were void, then that the sentence was in violation of the Fifth Amendment to the Constitution.

Charge I was: "Conspiring to defraud the United States, in violation of the 60th article of war." Charge II was: "Causing false and fraudulent claims to be made against the United States, in violation of the 60th article of war."

Charge III was: "Conduct unbecoming an officer and a gentleman, in violation of the 61st article of war." Charge IV was: "Embezzlement, as defined in section 5488 of the Revised Statutes, in violation of the 62d article of war."

If Charge IV be laid out of view, let us see if the sentence was void because in violation of the Fifth Amendment.

That amendment declares: "Nor shall any person be subjected for the same offence to be twice put in jeopardy of life or limb."

The Government objects in the outset that the Fifth Amend-
ment is not applicable in proceedings by court martial, and that
the question could only be raised under the 102d article of war,
which reads: "No person shall be tried a second time for the
same offence," and that, moreover, the point was not raised in
the court martial that proceeding to judgment under these three
charges would be either in violation of the 102d article of war,
or of the Fifth Amendment, and comes too late on application
for *habeas corpus*. And further, that the question was one
within the power of the court martial to decide, and must be
held to have been waived, or be assumed to have been ruled
against the accused, in which case the decision would be con-
clusive on *habeas corpus*, since if incorrect it would be merely
error, and would not go to the jurisdiction.

In *In re Belt, Petitioner*, 159 U. S. 95, we held that the Su-
preme Court of the District of Columbia had jurisdiction and
authority to determine the validity of an act which authorized
the waiver of a jury, and to dispose of the question as to whether
the record of a conviction before a judge without a jury, where
the prisoner waived trial by jury according to statute, was le-
gitimate proof of a first offence, and that, this being so, this
court could not review the action of that court, and the Court
of Appeals, in this particular on *habeas corpus*.

The case of *Ex parte Bigelow* was referred to and quoted
from thus: "In *Ex parte Bigelow*, 113 U. S. 328, 330, which
was a motion for leave to file a petition for *habeas corpus*, the
petitioner had been convicted and sentenced in the Supreme
Court of the District to imprisonment for five years under an
indictment for embezzlement. It appeared that there were
pending before that court fourteen indictments against the pe-
titioner for embezzlement, and an order of the court had di-
rected that they be consolidated under the statute and tried
together. A jury was empanelled and sworn, and the district
attorney had made his opening statement to the jury, when the
court took a recess, and upon reconvening a short time after-
wards, the court decided that the indictments could not be well
tried together, and directed the jury to be discharged from the
further consideration of them, and rescinded the order of con-

solidation. The prisoner was thereupon tried before the same jury on one of the indictments and found guilty. All of this was against his protest and without his consent. The judgment on the verdict was taken by appeal to the Supreme Court of the District in general term, where it was affirmed. It was argued here, as it was in the court in general term, that the empanelling and swearing of the jury and the statement of his case by the district attorney put the prisoner in jeopardy in respect of all the offences charged in the consolidated indictment, within the meaning of the Fifth Amendment, so that he could not be again tried for any of these offences, and Mr. Justice Miller, delivering the opinion of the court, after remarking that if the court of the District was without authority in the matter, this court would have power to discharge the prisoner from confinement, said: 'But that court had jurisdiction of the offence described in the indictment on which the prisoner was tried. It had jurisdiction of the prisoner, who was properly brought before the court. It had jurisdiction to hear the charge and the evidence against the prisoner. It had jurisdiction to hear and to decide upon the defences offered by him. The matter now presented was one of those defences. Whether it was a sufficient defence was a matter of law on which that court must pass so far as it was purely a question of law, and on which the jury under instructions of the court must pass if we can suppose any of the facts were such as required submission to the jury. If the question had been one of former acquittal—a much stronger case than this—the court would have had jurisdiction to decide upon the record whether there had been a former acquittal for the same offence, and if the identity of the offence were in dispute, it might be necessary on such a plea to submit that question to the jury on the issue raised by the plea. The same principle would apply to a plea of a former conviction. Clearly in these cases the court not only has jurisdiction to try and decide the question raised, but it is its imperative duty to do so. If the court makes a mistake on such trial it is error which may be corrected by the usual modes of correcting such errors, but that the court had jurisdiction to decide upon the matter raised by the plea both as matter of law and of fact

cannot be doubted. . . . It may be confessed that it is not always very easy to determine what matters go to the jurisdiction of a court so as to make its action when erroneous a nullity. But the general rule is that when the court has jurisdiction by law of the offence charged, and of the party who is so charged, its judgments are not nullities.' And the application was denied."

It is difficult to see why the sentences of courts martial, courts authorized by law in the enforcement of a system of government for a separate community recognized by the Constitution, are not within this rule. Its application would seem to be essential to the maintenance of that discipline which renders the Army efficient in war and morally progressive in peace, and which is secured by the military code and the decisions of the military courts.

Reserving, however, the determination of these questions, it is nevertheless clear that the system under which the accused was tried, and his status as an officer of the Army, must be borne in mind in deciding whether the amendment, if applicable, was or was not violated by this sentence.

The contention is that Captain Carter was twice put in jeopardy because the sentence was greater than the court martial had jurisdiction to inflict on conviction of any one of the offences charged, taken singly, and because the offences charged were the same within the meaning of the constitutional provision.

Articles 60 and 61 are as follows:

"ART. 60. Any person in the military service of the United States who makes or causes to be made any claim against the United States, or an officer thereof, knowing such claim to be false or fraudulent; or

"Who presents or causes to be presented to any person in the civil or military service thereof, for approval or payment, any claim against the United States or any officer thereof, knowing such claim to be false or fraudulent; or

"Who enters into any agreement or conspiracy to defraud the United States by obtaining, or aiding others to obtain, the allowance or payment of any false or fraudulent claim; or

" Who, for the purpose of obtaining, or aiding others to obtain, the approval, allowance, or payment of any claim against the United States or against any officer thereof, makes or uses, or procures or advises the making or use of, any writing, or other paper, knowing the same to contain any false or fraudulent statement ; or

" Who, for the purpose of obtaining, or aiding others to obtain, the approval, allowance, or payment of any claim against the United States, for any officer thereof, makes, or procures or advises the making of, any oath to any fact or to any writing or other paper, knowing such oath to be false ; or

" Who, for the purpose of obtaining, or aiding others to obtain, the approval, allowance, or payment of any claim against the United States for any officer thereof, forges or counterfeits, or procures or advises the forging or counterfeiting of, any signature upon any writing or other paper, or uses, or procures or advises the use of, any such signature, knowing the same to be forged or counterfeited ; or

" Who, having charge, possession, custody or control of any money or other property of the United States, furnished or intended for the military service thereof, knowingly delivers, or causes to be delivered, to any person having authority to receive the same, any amount thereof less than that for which he receives a certificate or receipt ; or

" Who, being authorized to make or deliver any paper certifying the receipt of any property of the United States, furnished or intended for the military service thereof, makes, or delivers to any person, such writing, without having full knowledge of the truth of the statements therein contained, and with intent to defraud the United States ; or

" Who steals, embezzles, knowingly and wilfully misappropriates, applies to his own use or benefit, or wrongfully or knowingly sells or disposes of any ordnance, arms, equipments, ammunition, clothing, subsistence stores, money, or other property of the United States, furnished or intended for the military service thereof ; or

" Who knowingly purchases, or receives in pledge for any obligation or indebtedness, from any soldier, officer, or other

person who is a part of or employed in said forces or service, any ordnance, arms, equipments, ammunition, clothing, subsistence stores, or other property of the United States, such soldier, officer, or other person not having lawful right to sell or pledge the same,

"Shall, on conviction thereof, be punished by fine or imprisonment, or by such other punishment as a court martial may adjudge. And if any person, being guilty of any of the offences aforesaid, while in the military service of the United States, receives his discharge, or is dismissed from the service, he shall continue to be liable to be arrested and held for trial and sentence by a court martial, in the same manner and to the same extent as if he had not received such discharge nor been dismissed.

"Art. 61. Any officer who is convicted of conduct unbecoming an officer and a gentleman shall be dismissed from the service."

It is said that the punishment must be imposed under either the 60th or the 61st articles, or under both; that the only penalty under the 61st article is dismissal; that the punishment under the 60th article may be "fine *or* imprisonment, or such other punishment as a court martial may adjudge," and that this is in the alternative and cannot be cumulative.

That that is the necessary construction is not to be conceded. Offences under this article may be of greater or less gravity, and the necessity for the exercise of discretion is obvious. Conviction in some cases might deserve the punishment of fine, or of imprisonment, or of both, as well as of dismissal in addition to either or both; in others lesser penalties might suffice. The word "or" was properly used to give play to discretion. This is the view expressed in Winthrop, vol. 2, p. 1101.

The 60th article was taken from sections 1 and 2 of the act of March 2, 1863, (12 Stat. 696, c. 67,) "to prevent and punish frauds upon the Government of the United States," brought forward in the Revised Statutes as § 5438, and that act provided that any person in the military service, if found guilty, "shall be punished by fine *and* imprisonment, or such other punishment as the court martial shall adjudge, save the punishment of

death," while a person in civil life guilty of the offence was punishable under section 3 " by imprisonment not less than one nor more than five years, *or* by fine of not less than one thousand dollars and not more than five thousand dollars;" but when the military offence was transferred to the military code, the word " and " was changed to the word " or." Hence, it is argued, that Congress thereby indicated that it intended to confine the punishment to either fine *or* imprisonment. We do not think this is necessarily so. The punishment of persons not in the military or naval service (in addition to a pecuniary forfeiture and double damages) was fixed at fine or imprisonment, and no other. The punishment of persons in the military service was fixed at fine and imprisonment, or such other punishment as the court martial might adjudge. The change of the word " and " to " or" tended to obviate controversy as to the range of discretion.

But suppose this otherwise, still it does not follow that a fine might not be inflicted for the commission of one of the offences enumerated in Article 60, and imprisonment for the commission of another.

The penalty denounced by Article 60 that the accused, on conviction, " may be punished by fine or imprisonment or such other punishment as a court martial may adjudge," is plainly to be taken distributively, and is applicable on conviction of either of the offences enumerated.

We understand the rule established by military usage to be " that the sentence of a court martial shall be, in every case, an *entirety ;* that is to say, that there shall be but a single sentence covering all the convictions on all the charges and specifications upon which the accused is found guilty, however separate and distinct may be the different offences found, and however different may be the punishments called for by the offences." 1 Winthrop, (2d ed.) 614.

Where then there is conviction of several offences, the sentence is warranted to the extent that such offences are punishable.

This was so ruled by the Circuit Court of Appeals for the Second Circuit in *Rose ex rel. Carter* v. *Roberts,* 99 Fed. Rep.

948, and Wallace, J., speaking for the court, said : "As has been stated, the relator was convicted of two of the offences defined by the sixtieth article of war. The record presents the charges and specifications upon which he was found guilty of those offences. The charges describe each offence in the language of the article. Whether the specifications support the charges or the evidence supports the specifications, we are not at liberty to consider. Nor is it open to inquiry whether the two offences were in fact but one and the same criminal act. When properly constituted and convened, a court martial has jurisdiction to hear and determine the question whether the accused is guilty of any of the offences created by the articles of war. This jurisdiction necessarily includes the authority to decide, when the charge preferred against the accused is the commission of one or more of these offences, whether the specifications and the evidence sufficiently exhibit the incriminating facts. As was said by the Supreme Court in *Dynes* v. *Hoover*, 20 How. 65, the sentence, when confirmed by the President, ' is altogether beyond the jurisdiction or inquiry of any civil tribunal whatever, unless it shall be in a case in which the court had no jurisdiction over the subject matter or charge, or one in which, having jurisdiction over the subject, it has failed to observe the rules prescribed by statute for its exercise.' Having found the relator to be guilty of two offences, the court was empowered by the statute to punish him as to one by fine and as to the other by imprisonment. The sentence was not in excess of its authority."

Cumulative sentences are not cumulative punishments, and a single sentence for several offences, in excess of that prescribed for one offence, may be authorized by statute. *In re De Bara*, 179 U. S. 316; *In re Henry*, 123 U. S. 372.

The offences charged under this article were not one and the same offence. This is apparent if the test of the identity of offences that the same evidence is required to sustain them be applied. The first charge alleged "a conspiracy to defraud," and the second charge alleged "causing false and fraudulent claims to be made," which were separate and distinct offences, one requiring certain evidence which the other did not. The

fact that both charges related to and grew out of one transaction made no difference.

In *Morey* v. *Commonwealth*, 108 Mass. 433, the Supreme Judicial Court of Massachusetts, speaking through Mr. Justice Gray, then a member of that tribunal, held: " A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offence. A single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

The sentence, then, of fine and imprisonment was justified by the convictions of the first and second charges.

Finally, it is contended on this branch of the case that the offence under Charge III is the same offence as those under Charges I and II, called by a different name, and hence that the punishment of dismissal was illegal because a third punishment where but two offences were committed.

As heretofore said, dismissal might have been added to fine and imprisonment as part of the punishment, for either or both of the offences, under the first and second charges.

But the offence of conduct unbecoming an officer and a gentleman is not the same offence as conspiracy to defraud, or the causing of false and fraudulent claims to be made, although to be guilty of the latter involves being guilty of the former.

Article 61 prescribes that " any officer who is convicted of conduct unbecoming an officer and a gentleman shall be dismissed from the service," and Article 100, that " when an officer is dismissed from the service for cowardice or fraud, the sentence shall further direct that the crime, punishment, name and place of birth of the delinquent shall be published in the newspapers in and about the camp, and in the State from which the offender came, or where he usually resides."

Article 97 is: "No person in the military service shall, under the sentence of a court martial, be punished by confinement in a penitentiary, unless the offence of which he may be convicted would, by some statute of the United States, or by some statute of the State, Territory, or District in which such offence may be committed, or by the common law, as the same exists in such State, Territory, or District, subject such convict to such punishment."

Confinement at hard labor in a penitentiary is prescribed by sections 5438 and 5488 of the Revised Statutes, section 5438 having been brought forward from the act of March 2, 1863, from which the 60th article was taken. (And see § 5442, Rev. Stat.; Act March 31, 1895, 28 Stat. 957.)

Conviction of Charges I and II was conviction of fraud, and Article 100 contemplates that the officer may be dismissed under Article 60 or under Article 61. Conviction of fraud under Article 60 plainly involves conviction under Article 61; and dismissal is as mandatory as degradation.

The contention that an officer convicted of crimes punishable in the penitentiary under Articles 60 and 97 cannot be so punished if he be also dismissed, or cannot be dismissed if he be so punished, is too unreasonable to be countenanced.

The result is that we are of opinion that the sentence cannot be invalidated on any of the grounds so far considered.

The fourth charge was: "Embezzlement, as defined in section 5488, Revised Statutes of the United States, in violation of the 62d article of war."

Section 5488 reads: "Every disbursing officer of the United States who deposits any public money entrusted to him in any place or in any manner, except as authorized by law, or converts it to his own use in any way whatever, or loans with or without interest, or for any purpose not prescribed by law withdraws from the treasurer or any assistant treasurer, or any authorized depository, or for any purpose not prescribed by law transfers or applies any portion of the public money intrusted to him, is, in every such act deemed guilty of an embezzlement of the money so deposited, converted, loaned, withdrawn, transferred, or applied; and shall be punished by imprisonment with

hard labor for a term not less than one year nor more than ten years, or by a fine of not more than the amount embezzled or less than one thousand dollars, or by both such fine and imprisonment."

Article 62 is:

"ART. 62. All crimes not capital, and all disorders and neglects, which officers and soldiers may be guilty of, to the prejudice of good order and military discipline, though not mentioned in the foregoing Articles of War, are to be taken cognizance of by a general, or a regimental, garrison, or field officers' court martial, according to the nature and degree of the offence, and punished at the discretion of such court."

The construction would not be unreasonable if it were held that the words "though not mentioned in the foregoing articles of war" meant "notwithstanding they are not mentioned;" and that the article was intended to cover *all* crimes, whether previously enumerated or not. The reference is to crimes created or made punishable by the common law or by the statutes of the United States, when directly prejudicial to good order and military discipline. Our attention has not been called to any former adjudication of the particular point by the military courts, but we think it would be going much too far to say that, if a court martial so construed the words, and sentenced for a crime previously mentioned, the sentence, when made his own by the President, would be absolutely void.

Colonel Winthrop says, however, that "the construction of these words has uniformly been that they are words of limitation, restricting the application of the article to offences not named or included in the articles preceding; the policy of the provision being, as it is expressed by Samuel, 'to provide a general remedy for wrongs not elsewhere provided for.'" Vol. 2, p. 1126.

Accepting this construction, we are nevertheless of opinion that the specified crime was not "mentioned in the foregoing articles."

The first and fourth subdivisions of the 60th article of war provide that "any person in the military service of the United States who makes or causes to be made any claim against the United

States, or any officer thereof, knowing such claim to be false or fraudulent," or " who, for the purpose of obtaining, or aiding others to obtain, the approval, allowance or payment of any claim against the United States or against any officer thereof, makes or uses, or procures or advises the making or use of, any writing, or other paper, knowing the same to contain any false or fraudulent statement," shall, on conviction, be punished.

The specification under Charge IV alleged that the accused, as a disbursing officer of the United States, applied to a purpose not prescribed by law large sums of public money intrusted to him, for river and harbor purposes, by causing them to be paid out by checks on false accounts, the payment being accomplished by the drawing and delivery of the checks directing payment to be made of moneys of the United States, and thus withdrew by means of checks, from the authorized depository, moneys for an unauthorized purpose, and applied them to unlawful purposes. The application, coupled with the payment and withdrawal of the funds by checks, constituted the embezzlement defined in section 5488, while the specific acts set forth in subdivisions one and four of the 60th article were distinct from the acts prohibited by section 5488. By the charge, the particular offence was laid in general terms, and by the specification the facts constituting the offence charged were stated. The specification here set forth abstraction by fraudulent means of $230,749.90, and $345,000, moneys of the United States intrusted to the accused as a disbursing officer of the Government, but it was none the less *malum prohibitum* because it was also *malum in se*.

Nor are we persuaded by the ingenious argument of appellant's counsel that the crime alleged in this charge was covered by subdivision 9 of Article 60, because it was embezzlement of money "furnished or intended for the military service," § 5488, relating to the improper disposition of any public money. That subdivision denounces punishment on any person in the military service of the United States " who steals, embezzles, knowingly and wilfully misappropriates, applies to his own use or benefit, or wrongfully or knowingly sells or disposes of any ordnance, arms, equipments, ammunition, clothing, sub-

sistence stores, money, or other property of the United States, furnished or intended for the military service thereof." Most of these enumerated classes of property are obviously military stores used for military purposes, and on the principle of *noscitur a sociis* all the classes designated fall into the same category. And this seems to be put beyond question by the words "furnished or intended for the military service thereof." The military service as used in this connection means the land forces or the Army. The fact that money appropriated for river and harbor improvements is disbursed by an officer of the Army and the work supervised by the engineer force in the service of the government, does not make the moneys so appropriated moneys "furnished or intended for the military service," as the words are used in paragraph nine. This was the view of Lacombe, J., in holding the sentence supported by the conviction of the fourth charge. 97 Fed. Rep. 496. The Circuit Court of Appeals, without questioning the correctness of that conclusion, did not consider the question, because it sustained the sentence under the conviction of the first and second charges. The Circuit Court for the District of Kansas concurred in the conclusions of each of the other courts. We are of opinion that officers of the Army are in the eye of the law on military duty, although employed as such officers under statutes of the United States in the public service on duties not in themselves pertaining to the Army, and that the moneys disbursed by them when so employed do not because they are such officers become money furnished and intended for the military service.

Illustrations are found in the administration of appropriations for the Indian service, the Light House service, superintending the Washington aqueduct, maintaining the public grounds about the White House, and the like.

The appropriations made for river and harbor improvements are *per se* for the benefit of commerce and navigation, and not for military or naval purposes, and the money is furnished and intended for public works in aid of commerce. In the exercise of the power to regulate commerce, Congress has repeatedly legislated in regard to the construction of river and harbor improvements in the navigable waters of the United States,

and enacted rules in relation thereto. The money made the subject of the embezzlement in this case was appropriated to be expended under the War Department by the act of Congress of June 3, 1896, (29 Stat. 202, c. 314,) entitled "An act making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes," and the act of June 4, 1897, (30 Stat. 11, 44, c. 2,) entitled "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June thirtieth, eighteen hundred and ninety-eight, and for other purposes."

The status of Captain Carter was not changed by his detail to the charge of these improvements, and he was still subject to the military jurisdiction.

It is further argued that the specification was wrongly laid under Article sixty-two, because "the money was applied to a purpose prescribed by law," and "the crime charged 'was not to the prejudice of good order and military discipline,'" but the contention is without merit.

The fact that the vouchers purported to be issued as against the appropriations for the improvement of the Savannah River and of Cumberland Sound, if these vouchers were false and falsely certified to, and if the accounts on which the moneys were paid were false, "the moneys not being due or owing, from the United States to the parties paid or to any one else, and he, the said Captain Carter, well knowing this to be the case," as stated in the specification, could not make the application of the money by that payment an application to a purpose prescribed by law.

We should suppose that embezzlement would be detrimental to the service within the intent and meaning of the article, but it is enough that it was peculiarly for the court martial to determine whether the crime charged was "to the prejudice of good order and military discipline." *Swaim* v. *United States,* 165 U. S. 553; *Smith* v. *Whitney,* 116 U. S. 178; *United States* v. *Fletcher,* 148 U. S. 84.

In *Swaim* v. *United States,* which involved a sentence under the 62d article of war, Mr. Justice Shiras, delivering the opinion, said: "But, as the authorities heretofore cited show, this is the

very matter that falls within the province of courts martial, and in respect of which their conclusions cannot be controlled or reviewed by the civil courts. As was said in *Smith* v. *Whitney,* 116 U. S. 178, 'of questions not depending upon the construction of the statutes, but upon unwritten military law or usage, within the jurisdiction of courts martial, military or naval officers, from their training and experience in the service, are more competent judges than the courts of common law. . . . Under every system of military law for the government of either land or naval forces, the jurisdiction of courts martial extends to the trial and punishment of acts of military or naval officers which tend to bring disgrace and reproach upon the service of which they are members, whether those acts are done in the performance of military duties, or in a civil position, or in a social relation, or in private business.'"

The case has been argued with zeal and ability, and it has received the consideration which its importance demanded. If these observations have been extended beyond what was strictly required, that should at least serve to show that no material suggestion bearing on the disposal of this appeal has escaped attention.

But we must not be understood by anything we have said as intending in the slightest degree to impair the salutary rule that the sentences of courts martial, when affirmed by the military tribunal of last resort, cannot be revised by the civil courts save only when void because of an absolute want of power, and not merely voidable because of the defective exercise of power possessed.

*Order affirmed.*

Mr. Justice Harlan did not hear the argument and took no part in the consideration and disposition of the case.