McGOWAN v. MOODY, Secretary of the Navy.

HABEAS CORPUS; JURISDICTION.

1. The supreme court of the District of Columbia has no jurisdiction in a habeas corpus proceeding against the Secretary of the Navy to inquire into the grounds of the detention of a person, not an inhabitant of this District, and who was not arrested or committed, and who has never been confined within its limits, but who, it is claimed, is unlawfully restrained of his liberty in a distant possession of the United States, by or under the authority of an officer of the Navy acting as governor thereof, solely because the Secretary in the discharge of his official duties resides in this District.

2. *Quœre*, whether the writ of habeas corpus will lie in this District against a person who, having custody of another, has removed the latter from the District before the issuance of the writ, for the purpose of evading the process of the court, but who may still have the power to produce him.

3. An allegation in a petition for the writ of habeas corpus against the Secretary of the Navy, that the person in whose behalf the petition is

filed is restrained of his liberty by the agents and subordinates of the Secretary, and is within his control, through the custody of a person unknown, who exercises his authority under the orders of the Secretary, states a conclusion of law, which is not admitted by a return which is in the nature of an objection to the jurisdiction of the court; and under such circumstances this court will take judicial notice of the powers and duties of the Secretary under the Constitution and laws.

4. The officers of the Navy are not the agents of the Secretary of the Navy, but, like the Secretary himself, are the agents and representatives of the President, who is the Commander-in-Chief of the Army and Navy, and any authority the Secretary may exercise over them he exercises solely as representative of the President (following *United States ex rel. Brown* v. *Root,* 18 App. D. C. 239).

No. 1306. Submitted May 6, 1903. Decided June 2, 1903.

HEARING on an appeal by the petitioner from an order of the Supreme Court of the District of Columbia discharging a rule on the Secretary of the Navy to show cause on a petition for the writ of habeas corpus and dismissing the petition for want of jurisdiction. *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a judgment of the supreme court of the District, discharging a rule to show cause, on a petition for the writ of habeas corpus, and dismissing the said petition for want of jurisdiction.

The petition was filed by George A. McGowan, a citizen of the State of California, on behalf of Edward Johnson, who is alleged to be restrained of his liberty in a jail in the town of Agona in the island of Guam, which is part of the territory ceded to the United States by Spain, by virtue of the treaty of Paris, proclaimed April 11, 1899. The prayer is that the writ be directed to William H. Moody, Secretary of the Navy of the United States, and a resident of the District of Columbia, under whose control he is alleged to be.

It is alleged that said Johnson has not been committed and is not detained by virtue of any judgment, order, or process of any

court of civil or criminal jurisdiction, or of any court-martial having jurisdiction under the Constitution and laws of the United States. It is further alleged that, "on information and belief, the pretended cause of imprisonment, detention, or restraint of said Johnson is that said Johnson was, at and before the times hereinafter mentioned, an enlisted man in the marine corps of the United States, serving in barracks in said island, whither he had been involuntarily ordered and sent by his lawful superior officers, and on or about the 7th day of May, A. D. 1901, the said Johnson was arrested by military authority on the charge of larceny or theft, alleged to have been committed at said barracks, of a box of clothing and about $300 in Mexican currency, from one Clarence J. Hoskins, also an enlisted man in the marine corps of the United States, and kept in confinement at said quarters until on or about the 17th day of May, A. D. 1901, when, pursuant to an alleged order, entitled general order No. 30, a copy of which and translation whereof are hereto annexed, marked A and B, respectively, issued by the military governor of said island, one Seaton Schroeder, a commander in the Navy of the United States, he was turned over by said military authority to the alleged civil authorities of the island, these latter being officers of the Navy or marine corps of the United States, or appointees of said governor or his predecessor, also an officer in the Navy of the United States; and on or about the 3d day of October, A. D. 1901, in the meantime not having had a hearing, said Johnson was brought before an alleged court, consisting of an ensign in the Navy of the United States, one Alfred W. Pressy, and after a pretended trial which was conducted in the Spanish language, which was not understood by said Johnson, the said authorities refusing to furnish the said Johnson with an interpreter, although by him requested so to do, the interrogatories put to said Johnson, however, being in the English language, said alleged court assumed to sentence said Johnson to six years' imprisonment, to begin on the 21st day of November, A. D. 1901, which alleged sentence he is still serving out, confined as aforesaid. During said pretended trial, said Johnson was not permitted by said authorities to be present, except for the purpose

of answering interrogatories propounded to him, nor to hear the testimony adduced against him, nor to be confronted by the witnesses against him. At said pretended trial, said Johnson entered a plea to the jurisdiction of the alleged court, claiming that he should be tried by a court-martial of the Navy of the United States, but said plea was overruled and said alleged sentence imposed."

The return made by the Secretary of the Navy to the petition was in the nature of an objection to the jurisdiction of the court, on the ground that by the allegations of the petition, the prisoner was not committed, and is not restrained of his liberty, within the District of Columbia.

*Mr. Franklin H. Mackey* and *Mr. Walter D. Davidge* for the appellant:

1. Without going into the history of the writ of habeas corpus, suffice it to say that, independently of any statute, it is a writ of the common law. *Deckard* v. *State,* 38 Md. 186, 203; *Ex parte Beeching,* 4 Barn. & Cress. 515; and *In Re Jackson,* 15 Mich. 417. Indeed, the legislation seems to be more limited in its scope than the common law on this subject. The statute of 31 Charles II. seems not to have been in force in Michigan at all. It added no new principle to the law. Hallam, Const. Hist. c. 13; 3 Campbell's Lives of Chief Justices, c. 35. That the common law was in force in Maryland at the time of the cession of the District of Columbia there can be no doubt. *Griffith* v. *Griffith,* 4 H. & M. H. 122; *Coomes* v. *Clements,* 4 H. and J. 482; *Dashiel* v. *Atty. Gen.* 5 H. & J. 401. The act of Congress of February 17, 1801, "concerning the District of Columbia," establishing the circuit court of the District of Columbia, adopted the laws of Maryland as they then existed in the territory ceded by Maryland to the United States. This act conferred on the circuit court the jurisdiction of the circuit courts of the United States, as then constituted, in addition to the laws of Maryland, including the common law. 2 Stat. 103. And by the act of March 3, 1863, the powers possessed and exer-

cised by the circuit court of the District passed to the supreme court of the District of Columbia. 12 Stat. 763. Nor was the jurisdiction altered in this respect by the revision of the statutes in 1877. *United States* v. *Schurz,* 120 U. S. 378. And this jurisdiction is adopted by the Code, § 61.

2. But the respondent claims that the jurisdiction to issue the writ in the present case is taken away by § 1143 of the Code, which in terms applies only to cases of confinement within the District. His argument is that whatever may have been the law, it is now superseded by that provision. On the contrary, the Code expressly, although perhaps unnecessarily, re-enacts the common law together with the statutes which have before adopted it, except in so far as they are inconsistent with or replaced by some provision of the code. Code, §§ 1, 61, 1640. If the Code mean by confinement within the District that the body of the prisoner must actually be within the territorial limits, then it cannot be said to replace, and certainly not to repeal, the common law. At most, it can be said merely to point out what may be done when the body is actually within the District. But these words are very common in such statutes, and it is held that the confinement is where the person who exercises the control is. It is the power to produce that is the important element; not the location of the body, which is immaterial so long as there is a person within the jurisdiction who can produce it. *Ex parte Milliken,* 4 Wall. 2; *Wales* v. *Whitney,* 114 U. S. 574; *United States* v. *Davis,* 5 Cranch. C. C. 622; *In Re Jackson,* 15 Mich. 417; *Ex parte Young,* 50 Fed. R. 526; *Rivers* v. *Mitchell,* 10 N. W. Rep. 626, 57 Iowa, 193; *Queen* v. *Barnardo* (*Gossage's Case*) L. R. 24, Q. B. Div. 283. The person confined voluntarily comes into court by his attorneys, and if the respondent be also within the jurisdiction and can produce the prisoner (and the respondent here by his demurrer admits his ability to do so), what more can be necessary for the jurisdiction of the court?

A case directly in point arose in this jurisdiction. A writ of habeas corpus ad subjiciendum issued from the circuit court directed to one Davis, commanding him to have before the court the bodies of certain negroes, with the cause of their detention.

The return stated that he had publicly purchased the negroes for a reasonable price; that he had no reason to doubt they were slaves for life as warranted by the vendor. It further stated that the negroes had been removed beyond the District before he knew of the existence of such process, and that they were then out of the control and custody of respondent. There was evidence tending to show that he had removed them because he suspected they would apply for the writ. On this the court passed an order adjudging the return insufficient and evasive, and requiring him to produce the negroes, in default of which he was committed to the marshal. Subsequently he produced the negroes and regained his freedom. *United States* v. *Davis,* 5 Cr. C. C. 622.

This case is especially instructive for the reason that there was then in force in the District a Maryland act very similar to the section of the Code now relied on by the respondent. We refer to that found in Kilty's Laws of Maryland, Chap. 106, which conferred on the several county courts, during their respective sittings, and, at all other times the chief justice of the several districts respectively, jurisdiction to issue the writ and cause to be brought before them any person confined within their respective jurisdictions, etc. This act was in force when *United States* v. *Davis* was decided, but the court required the production of the bodies.

A similar case arose in Michigan. One Jackson was a minor, and the petitioners were his testamentary guardians, and respondent had caused, before the writ had been applied for, the minor to be taken out of the State of Michigan and beyond the jurisdiction, and still continued to keep him (through respondent's wife) out of the State after the service of the writ. It appeared from the return that the respondent's wife had been duly appointed the minor's guardian by the surrogate's court of Canada, a court of competent jurisdiction in the province of Canada West. All the judges concurred in refusing to issue the writ because of the appointment of the Canadian guardian. But Cooley and Christiancy, JJ., thought that, but for this, the writ should issue. Campbell, J., and Martin, Ch. J., thought the writ should

not issue, for the reason that the Michigan statute limited the writ to cases of imprisonment "within this State."

It is impossible to read the opinion of Cooley, J., without being convinced of the soundness of his position. *In Re Jackson,* 15 Mich. 417, 439, 440. In *Ex parte Young,* Key, District Judge, followed and adopted the opinion of Cooley, J., in the Jackson case. *Ex parte Young,* 50 Fed. R. 526. So also in Iowa: *Rivers* v. *Mitchell,* 10 N. W. Rep. 626, 57 Iowa, 193. And in a late (1890) English case, where an application was made by a parent for the writ of habeas corpus, directed to the head of an institution for destitute children, in which a child had been placed, it appeared that before the proceedings commenced, he had, without authority from the parent, handed over the child to another person to be taken to Canada, and that he did not know the address of such person or where he or the child was, it was held that the writ should issue, requiring the respondent to produce in England the child which had been sent to Canada: *Queen* v. *Barnardo* (*Gossage's Case*) L. R. 24, Q. B. Div. 283. The respondent, of course, must be within the jurisdiction, for it is against him the writ is directed. Were the law that both he and the prisoner had to be within the same jurisdiction, then it could be readily evaded, for the oppressor might bind the prisoner to the end of a pole and thrust him just beyond the border. The prisoner would then be without remedy. If that were possible, the law would be a farce, and the Anglo-Saxon boast of individual liberty as sounding brass or a tinkling cymbal. No cases will be found, we are confident, to sustain such a contention. Those read by the respondent at the hearing below related to cases where the *corpus* was within the jurisdiction, and the court was not called upon in those cases to pass upon, and indeed did not pass upon, such a case as we now have under consideration.

3. A word now as to the opinion of the court below. The learned judge who heard the case seems to have confounded, we respectfully submit, the Federal courts proper with the courts of the District of Columbia. The local courts are indeed Federal, but they have superadded a common-law jurisdiction not granted

to the circuit and district courts of the United States, the juris-diction of the Federal courts proper being purely statutory. *In Re Spencer,* McA. & M. 433; *United States* v. *Kendall,* 5 Cranch C. C. 164.

Again, his honor states that in *United States* v. *Davis, supra,* the judgment was based on the contempt on the part of the re-spondent. Not only would the action of the respondent not have amounted to contempt, but, moreover, the order of the court is set out verbatim at page 623 of the report and shows that the ground of the judgment was the evasive and insufficient character of the return.

Another objection to the granting of the writ, the court below held, was the fact that although it is possible to serve the writ here upon a person having power to produce the body of the prisoner, yet it is only upon the immediate custodian of the body that the writ may be properly served. Such a construc-tion of the law would involve us in the absurdity to which we have heretofore called attention. Moreover the petitioner avers that he does not know who the immediate custodian of the pris-oner is. The jailer is probably the officers and men of the guard, which changes daily. Were it possible to obtain a writ against the jailer of today, it would become inoperative tomor-row. In the cases above cited the writ was not served on the immediate custodian, but on the person having the power to produce the body. *United States* v. *Davis, supra; In re Jackson, supra; Ex parte Young, supra; Rivers* v. *Mitchell, supra; Queen* v. *Barnardo, supra.*

*Mr. Morgan H. Beach,* United States Attorney for the Dis-trict of Columbia, and *Mr. Jesse C. Adkins* for the appellee:

1. The supreme court of the District of Columbia is without power to issue the writ of habeas corpus as prayed in this case. Section 1143, Code, D. C. The rule is well settled that a court has power to issue the writ of habeas corpus only in cases where the petitioner is imprisoned within the territorial limits of the jurisdiction of the court, and has been many times so laid down.

See *Ableman* v. *Booth,* 21 How. 506, 523, 524; *Tarble's Case,* 13 Wall. 397, 409; *Robb* v. *Connolly,* 111 U. S. 624, 631, 633, 637, 639; *Ex parte Royall,* 117 U. S. 241, 248; *New York* v. *Eno,* 155 U. S. 89, 93; *In re Chapman,* 156 U. S. 211, 216; *Ex parte Farley,* 40 Fed. (C. C.) 66, 68; *In re Boles,* 48 Fed. (C. C. A.) 75; *U. S. ex rel Hurd* v. *Arnold,* 82 Fed. (C. C. A.) 769, 770; *In re Spangler,* 11 Mich. 298, 309, 310, 311.

2. The writ of habeas corpus should be directed to the person having the immediate custody of the person imprisoned. *Wales* v. *Whitney,* 114 U. S. 564, 574:

Mr. Justice SHEPARD delivered the opinion of the Court:

Jurisdiction to issue the writ of habeas corpus is conferred upon the supreme court of the District of Columbia by § 1143 of the Code, which reads as follows:

"Any person committed, detained, confined, or restrained from his lawful liberty within the District, under any color or pretense whatever, or any person in his or her behalf, may apply by petition to the supreme court of the District, or any justice thereof, for a writ of habeas corpus, to the end that the cause of such commitment, detainer, confinement, or restraint may be inquired into; and the court or the justice applied to, if the facts set forth in the petition make a prima facie case, shall forthwith grant such writ, directed to the officer or other person in whose custody or keeping the party so detained shall be, returnable forthwith before said court or justice."

Other sections relate to the procedure and need not be recited.

If the jurisdiction of the supreme court of the District of Columbia is to be determined by the foregoing enactment alone, it is plain that the petition was rightly dismissed. This is conceded by the appellant, as well also as that the jurisdiction of United States courts in general to issue the writ of habeas corpus, is purely statutory. But it is contended that the supreme court of the District of Columbia is an exception to this rule, and that it is clothed with all the jurisdiction in the premises that

belonged to the court of King's bench in England under the common law.  It is argued that the act of Congress of 1801, accepting the cession by Maryland of the territory now composing the District of Columbia, adopted, together with the statutes of Maryland, the common law as in force therein; that the courts of the District, as provided for then, were invested with all the common-law jurisdiction of the Maryland courts, as well as with that of the Federal courts; that by the act of March 3, 1863, the powers of the former District courts passed to the present supreme court thereby created; and that by the recent Code the jurisdiction of the court is confirmed.  District of Columbia Code, § 61.

Assuming the existence of the general jurisdiction as claimed, it is further contended that the proceeding to enforce the right of one unlawfully restrained of his liberty, though under prosecution or commitment for an alleged crime, is a civil proceeding, as held in *Ex parte Tom Tong,* 108 U. S. 556, 27 L. ed. 826, 2 Sup. Ct. Rep. 871, and that, therefore, the jurisdiction to issue the writ in the particular case is determinable, not by the place of detention, but by the presence, within the territorial jurisdiction, of the person charged with maintaining that detention, and made respondent in the proceeding.

If granted, for the sake of the argument, that the supreme court of the District has general common-law jurisdiction unimpaired by the terms of the statute, the question is raised:— Does that jurisdiction extend to the case of any person unlawfully restrained of his liberty, in a distant possession of the United States, by, or under the authority of, an officer of the Navy acting as governor thereof, because the Secretary of the Navy, in the discharge of his official duties as the head of that department, maintains his residence in the District of Columbia ?

In other words—to give the question its necessary scope— has that court jurisdiction to inquire into the grounds of the detention of any and all persons who, it may be alleged, are unlawfully restrained of their liberty by officers of the Navy or Army, in any State, Territory, or outlying possession of the United States, merely because the respective heads of the Navy

and War Departments of the Government may be found, and personally served with process, within the District of Columbia?

On the argument, counsel for the appellant limited their contention to the single case, as presented, of imprisonment on the island of Guam, the administration of which has been committed by executive order to the Navy Department, and for which no civil court has been provided or invested with any jurisdiction. But the broad question as put is necessarily included in the narrow one. If the jurisdiction exists in the one case it must in the others. The question is one of power, and not of the expediency of its exercise in the particular case, because there may happen to be no other tribunal in which relief might be had.

We are compelled to give a negative answer to the question, notwithstanding it may possibly be that the party on whose behalf the petition is presented is restrained of his liberty under the order of a tribunal unknown to the Constitution and law, and is without certain remedy in any other court.

No case has been called to our attention in which it is made to appear that the court of King's bench ever exercised jurisdiction in a like case, either under or independently of the habeas corpus act of 31 Charles II. Nor have we discovered a single American case in which a similar jurisdiction has been maintained.

The reliance of counsel for the appellant is chiefly upon the expressions of Mr. Justice Cooley in his dissenting opinion in the case of *Re Jackson,* 15 Mich. 417, 432, reinforced, it is claimed, by several decisions, which we shall proceed to examine in their order.

In *Jackson's case* the petition for habeas corpus was presented by guardians of the minor, Samuel W. Jackson, who had been duly appointed by a Michigan court, against Samuel Taff, who, pending that proceeding, it seems had taken the minor from Michigan into Canada, and there detained him, through the agency of his wife, who obeyed his orders. Taff remained in Michigan, was served with process, and appeared, first, with a motion to quash on the ground that the court had no jurisdiction

to issue the writ because the petition showed that the unlawful detention was not within the limits of the State, but in Canada. He then made a return alleging that the minor was not detained by him in Canada, but by a guardian that had been regularly appointed for him by a court therein. The entire court, consisting of four members, agreed in discharging the writ because of the allegation of the return, the truth of which was unquestioned. But they were equally divided upon the question whether the court had jurisdiction to issue the writ and require a return thereon, upon a petition, which showed upon its face that the minor was detained outside of the limits of the State, but subject to the control of the respondent.

The question was carefully considered and ably discussed by Mr. Justice Campbell on one side and Mr. Justice Cooley on the other. The former, who denied the jurisdiction, said: "The question then arises, whether the running of this writ is determined by the situation of the person to be relieved, or by that of the persons concerned in the unlawful detention. Among all the precedents, ancient and modern, which I have been able to find, there is none which does not show the question as to whether the writ would run into the privileged places, to have arisen concerning an imprisonment there. No point was ever made upon the service of the writ upon the wrongdoer outside of the place of imprisonment, as making any difference. And there can be no doubt that the legal purpose of the writ is to relieve from the illegal restraint on the ground of its illegality, and on no other ground. * * * The exigency of the writ is to bring up the body, and there is no instance in the law where a writ requires any act to be done beyond the jurisdiction which issues it. If there are attachments and penalties, they all refer to some refusal or neglect to do an act lawfully prescribed; and no one can maintain that if a person, to whom such a writ is directed should do anything abroad towards complying with it he could thereby justify himself against conflicting claims asserted in the foreign jurisdiction. A writ must spend itself in the jurisdiction which issues it; and there is no principle which can give one State a right to con-

sider an act done in another to an individual as an offense against itself."

On the other hand, Mr. Justice Cooley expressed the opinion that the court of King's bench in England, to which he likened the jurisdiction of the Michigan court, did not derive its jurisdiction to issue and enforce the writ from the statute; that the statutes were not passed to give the right, but to compel the observance of rights which existed. He then used the following language upon which the appellant strongly relies: "The important fact to be observed in regard to the mode of procedure upon this writ is that it is directed to, and served upon, not the person confined, but his jailer. It does not reach the former except through the latter. The officer or person who serves it does not unbar the prison doors and set the prisoner free, but the court relives him by compelling the oppressor to release his constraint. The whole force of the writ is spent upon the respondent, and if he fails to obey it, the means to be resorted to for the purposes of compulsion are fine and imprisonment. This is the ordinary mode of affording relief, and if any other means are resorted to they are only auxiliary to those which are usual. The place of confinement is, therefore, not important to the relief, if the guilty party is within reach of process, so that by the power of the court he can be compelled to release his grasp." This general language, however, must be considered in the light of the context. The learned justice had already stated the question to which his language was applied, as follows:

"The question nakedly presented, therefore, was whether we had any jurisdiction to relieve from unlawful imprisonment a person, confined beyond the limits of the State, but who was one of our citizens, removed wrongfully to evade process, and for the purpose of the unlawful confinement, and whose jailor was here, and might be compelled to open his prison doors by our order, if we have power to make one." And in concluding the argument from which we have before quoted, he said: "What I say on this subject is carefully restricted to the case of a citizen of our own State unlawfully held in custody elsewhere by another person, who is himself within the jurisdiction of this

court. If he is here the wrong is being done here, for the wrong is done wherever the power of control is exercised."

Coming, then, to the return to the writ, which showed that after removing the child to Canada, a guardian had been appointed by a court of that country, he and Mr. Justice Christiancy agreed to the discharge of the writ on the ground that, by reason of the appointment of a guardian for the child in Canada, he was no longer under respondent's control.

The only authority cited by Judge Cooley in support of his view in regard to the jurisdiction to issue the writ is a decision of the former circuit court of this District. *United States* v. *Davis,* 5 Cranch. C. C. 622, Fed. Cas. No. 14,926.

All that appears in the brief report of that case is that upon a writ issued to Davis to produce the bodies of three negroes, alleged to be unlawfully held in custody by him in the District of Columbia, he made return that he had purchased them as slaves for value, believing them to be such; that they had been removed before the issue of the writ, and are now out of his custody, and, as he believes, beyond the District of Columbia. The court, on January 16, 1840, adjudged the answer to be evasive and insufficient, and committed Davis until he should produce the said negroes. On January 20, Davis brought two of them into court, and it was made to appear that the third had run away and was in jail in Baltimore. Davis was discharged, and the two negroes were held until they subsequently established their right to freedom.

That case, as reported, does not establish the claim of jurisdiction as presented here. The answer of the respondent was unquestionably evasive. Davis, a resident of the District, had certainly held the negroes in confinement within its limits. His answer was evasive and insufficient in that it did not appear they were not then within the jurisdiction of the court; and his prompt production of two of them, and proof of the escape of the third, indicated clearly that they had remained entirely within his control.

The doctrine of Judge Cooley, as limited by him, has been maintained by the supreme court of Iowa in a case where there

was a controversy between husband and wife regarding the custody of two young children. The answer of the husband, one of the respondents, was to the effect that a few days before the issuance of the writ, he transferred the custody of the children to his mother, a codefendant, who had removed them across the line into Missouri, about five miles away; and that he had had no control or possession of them since said transfer. The answer was held to be evasive, because it did not appear that respondent did not have the power to produce the children in obedience to the writ. *Rivers* v. *Mitchell,* 57 Iowa, 193, 10 N. W. 626. A recent English case, in which the purpose to evade the process was clearly indicated, is substantially to the same effect. *Queen* v. *Barnardo,* L. R. 24 Q. B. Div. 283. In that case a child had been temporarily committed to the respondent who was the founder and manager of a home for destitute children. Demand for the possession of the child had been made and persisted in by the mother. Without notice to her, he delivered the child to a person who removed him to Canada. Lord Esher, M. R. said that, having parted with the possession illegally before the writ issued, it was not sufficient to discharge the writ to say that it was almost impossible for him to produce the child; there must be an absolute impossibility. Fry, L. J., said: "I entirely agree with what the Lord Chief Justice said on this head in the court below. He said referring to the argument for the appellant, 'it is contrary to good sense, because a person would then only have to break the law and say, "you cannot put the law in force against me because I have broken it;" a man would only have to take care beforehand to prevent himself from being able to obey a writ, if he thought he was coming to tell the court so, and they could not issue the writ because the person had already prevented his being able to return to it. He would be able to laugh in the face of the court and to reduce the power and jurisdiction of the court to almost nothing.' If there be reason to believe that an illegal act has been done in order to defeat the anticipated process of the court, and that on the issue of the writ, the person will ultimately be produced, then, in my opinion, the writ ought to go. In the present

case the circumstances do, in my opinion, afford strong grounds for inferring that that is the real nature of the case."

The foregoing cases, with the exception of *United States* v. *Davis,* which is analogous, involved the right to the custody of minor children who had been removed from the State of their domicil for the purpose of evading the process of the courts to which they were rightfully amenable; and the power to issue the writ upon such showing was maintained, not because the jurisdiction, as in strictly civil actions, depended upon power over the person of the defendant or respondent, but because that person, having attempted to evade the just power of the court over the child detained, might still have it within his power to produce him, so that the court might then exercise its jurisdiction to the extent of final and complete relief.

On account of the special circumstances,—the removal of the party affected to another jurisdiction in order to successfully defy the process of the courts charged with his protection, and the continued detention by the same wrongdoer, who remained within the reach of the court,—the cases were treated substantially as if the unlawful detention was actually maintained, as it was virtually, within the limits of the State.

It may be that the supreme court of the District of Columbia would entertain jurisdiction under like conditions, but as that is not the question now presented we express no opinion in respect of it. None of those conditions exist in the case at bar. The party, on whose behalf the petition has been presented, is not an inhabitant of the District of Columbia; he was not arrested or committed, and has never been confined, within its limits.

Jurisdiction to issue the writ on his behalf, then, depends upon the single circumstance that the Secretary of the Navy is alleged to have the final control over his imprisonment. It is to this broad claim of jurisdiction that we deny our assent.

But if the jurisdiction of the court were maintainable on the ground claimed, the judgment would nevertheless have to be affirmed. The prisoner is not in the actual custody of the Secretary. The allegation that he is restrained by the agents and

subordinates of the Secretary, and is within his control, through the custody of a person unknown, who exercises his authority under the orders of the Secretary, is a conclusion of law. We must take judicial notice of the powers and duties of the Secretary under the Constitution and laws. The officers of the Navy are not his agents. They, like the Secretary himself, are the agents and representatives of the President of the United States, who is the Commander-in-Chief of the Army and Navy. The officers in command of the island of Guam are subject to his orders. Any authority which the Secretary may exercise over them is solely as the representative of the President, in his name, and as the organ of his will. *United States ex rel. Brown* v. *Root,* 18 App. D. C. 239, 242.

The power to relieve the prisoner, or to produce him in obedience to the writ, is in the President, and not in the Secretary of the Navy. The judgment must be affirmed, with costs; and it is so ordered. *Affirmed.*