**O'MALLEY v. HIATT, Warden.**

**No. 208.**

District Court, M. D. Pennsylvania.
Oct. 24, 1947.

Hugh J. McMenamin, of Scranton, Pa., for petitioner.

Arthur A. Maguire, U. S. Atty., of Scranton, Pa., Charles W. Kalp, Asst. U. S. Atty., of Lewisburg, Pa., and Major Thayer Chapman, Office of Judge Advocate General, of Washington, D. C., for respondent.

MURPHY, District Judge.

We have for disposition a rule to show cause why a writ of habeas corpus should not issue to release from the United States Penitentiary at Lewisburg, Pennsylvania, a military prisoner who is serving a sentence of fifteen (15) years. Petitioner was adjudged guilty and sentenced by an Army court-martial April 18, 1945; sentence was approved April 29, 1945, and the Lewisburg Penitentiary designated as the place of confinement.

Prior to his incarceration at Lewisburg Penitentiary, petitioner had been a military prisoner at the Midwestern Branch, United States Disciplinary Barracks, Fort Benjamin Harrison, Indiana, under sentence of a military court-martial to serve five (5) years. Petitioner was adjudged guilty and sentenced July 4, 1944; the sentence was approved August 19, 1944. Under date of July 9, 1945, by direction of the President, confinement under the five (5) year sentence in excess of two and three-fourths years was remitted. Petitioner was dishonorably discharged August 6, 1946, and released from confinement at the Detention Barracks September 22, 1946. The Army authorities should have made provision for his immediate transfer to the Lewisburg Penitentiary to commence service of the fifteen (15) year sentence, but through some mistake or inadvertence petitioner was given a Separation Qualification Record, WD AGO Form 100 July 1, 1945, a notice to notify his draft board on his return to his home in this district, and was released from custody. Just how the mistake occurred the record does not reveal.

Petitioner returned to his home. From March 15, 1947, to September 24, 1947, he was in custody of the penal authorities of the Commonwealth of Pennsylvania for violation of its laws subsequent to his release from the Detention Barracks. Immediately upon his release from the custody of the State authorities he was again taken into custody by the Army and lodged in the Penitentiary under and by virtue of the authority of a duly authenticated copy of General Court-Martial Order No. 1155 which requires petitioner to serve a sentence of fifteen (15) years.

When the petition for a writ of habeas corpus was presented, we granted a rule to show cause why a writ should not issue directed as requested to the Army authorities. The petition was later amended to include as party respondent Warden Hiatt of the Lewisburg Penitentiary. We also ordered the warden to produce petitioner so that he could testify at the hearing on the rule. An answer to the rule was duly filed by the warden admitting custody of petitioner and stating the authority for the detention was conferred by General Court-Martial Order No. 1155 which requires service of a fifteen (15) year sentence.

At the hearing all evidence offered was received in evidence. Petitioner testified on direct and cross examination and placed in evidence a copy of his Separation Qualification Record and the Selective Service paper. Respondent offered in evidence the complete court-martial records of each of petitioner's trials and sentences as duly approved, and petitioner's "Enlisted Record and Report of Separation Dishonorable Discharge," WD AGO 53–57, 1 November 1944.

Upon motion of counsel for respondent we dismissed the proceedings as to the Army authorities because of lack of jurisdiction of the parties respondent, none of whom were at anytime herein concerned with the Middle District of Pennsylvania, and because petitioner was not in their custody or being detained by them. Petition-

er was in the custody of Warden Hiatt. Sanders v. Allen et al., 1938, 69 App.D.C. 307, 100 F.2d 717; 39 C.J.S., Habeas Corpus, § 54, pp. 597, 598; McGowan v. Moody, 22 App.D.C. 148. "* * * the writ shall be directed to the person in whose custody the party is detained." R. S. § 755, 28 U.S.C.A. § 455. "* * * district courts, within their respective jurisdictions, shall have power to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty. * * *" R.S. § 752, February 13, 1925, c. 229, § 6, 43 Stat. 940, 28 U.S.C.A. § 452; United States ex rel. Belardi v. Day, 3 Cir., 50 F.2d 816; United States ex rel. Harrington v. Schlotfeldt, 7 Cir., 136 F.2d 935, certiorari denied Krause v. United States, 327 U.S. 781, 66 S.Ct. 680, 90 L.Ed. 1008; Boyce v. United States, D. C.M.D.Pa.1943, 52 F.Supp. 115; 39 C.J.S., Habeas Corpus, § 69c, p. 615.

There remains the question of the legality of the detention of petitioner. No question has been raised as to the jurisdiction of the military court-martial, as to the subject matter or person. No complaint has been made as to any failure to preserve the constitutional safeguards to which petitioner was entitled through the court-martial proceedings. The contention of petitioner is stated in his petition as follows: That on September 22, 1946, he was "separated from the United States Army by official action on the part of competent Army authorities and officers. Having been returned to civilian status by the United States Army through its properly constituted officers I am no longer subject to the discipline and control of the United States Army and its officers and agents. I am therefore illegally held in custody at the present time."

In his brief petitioner's counsel cites authorities to the effect that "change of status is controlling on whether or not the military authorities have lost jurisdiction over a former member of the United States Army," and cites Billings v. Truesdell, 321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917 (induction); In re Morrissey, 137 U.S. 157, 11 S.Ct. 57, 34 L.Ed. 644 (minor); Ex parte Caplis, D.C., 275 F. 980 (registrant); In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (over enlistment age); Ex parte Wilson, D.C., 33 F.2d 214 (ex-naval officer who had been dropped from the rolls by letter of the President, later attempted to court-martial for offense while in service); Ex parte Romano, D.C., 251 F. 762 (alien not subject to draft); In re Di Bartolo, D. C., 50 F.Supp. 929 (one accompanying the Army); Ex parte Weitz, D.C., 256 F. 58 (one accompanying the Army, contractor's chauffeur); Wallace v. United States, 258 U.S. 296, 42 S.Ct. 318, 66 L.Ed. 626 (confirmation of successor and removal of former officer). None of these cases are controlling; none of them meet the situation with which we are confronted. Petitioner assumes that by the dishonorable discharge and the release from confinement he had been released from the jurisdiction of the United States Army. We hold to the contrary.

Petitioner enlisted as a soldier in the service of the United States on January 17, 1940 for three years. Act of June 3, 1916, c. 134, § 27, 39 Stat. 185, Act of June 4, 1920, c. 227, subchapter 1, § 27, 41 Stat. 775, 10 U.S.C.A. § 628. The period of enlistment was extended for the duration of the war and six months. Act of December 13, 1941, c. 571, § 1, 55 Stat. 799, Id., § 2, 55 Stat. 800, 50 U.S.C.A.Appendix, §§ 731, 732.

Ex parte Quirin, 317 U.S. 1, at page 26, 63 S.Ct. 1, 10, 87 L.Ed. 3, "By the Articles of War, 10 U.S.C. §§ 1471–1593, 10 U.S. C.A. §§ 1471–1593, Congress has provided rules for the government of the Army. It has provided for the trial and punishment, by courts martial, of violations of the Articles by members of the armed forces and by specified classes of persons associated or serving with the Army. Arts. 1, 2."

Article of War 2 provides, inter alia, "The following persons are subject to these articles and shall be understood as included in the term 'any person subject to military law,' or 'persons subject to military law,' * * * (e) all persons under sentence adjudged by courts-martial." Act of June 4, 1920, c. 227, subchapter 2, § 1, 41 Stat. 787, 10 U.S.C.A. § 1473 and subd. (e).

By a general court-martial convened at Fremington, Devon, England, July 4, 1944,

48

petitioner was adjudged guilty of violating the 61st Article of War, 10 U.S.C.A. § 1533 (absent without leave), the 96th Article of War, 10 U.S.C.A. § 1568 (wrongfully wearing uniform of non-commissioned officer). A charge of violating Article of War 93, 10 U.S.C.A. § 1565 (larceny) was nol prossed.

The sentence was "to be dishonorably discharged from the services, to forfeit all pay and allowances due or to become due and to be confined at hard labor at such place as the reviewing authority may direct for five (5) years."

General Court-Martial Order No. 297, August 19, 1944, provided "The sentence is approved and will be duly executed but the execution of that portion thereof adjudging dishonorable discharge is suspended until the soldier's release from confinement. The 2912th Disciplinary Training Center, Shepton Mallet, Somerset, England, is designated as the place of confinement."

General Court-Martial Order No. 4, January 2, 1945, provided, " * * * so much of the sentence published in General Court-Martial Orders No. 297 * * * 19 August 1944 as remains unexecuted on 15 January 1945, is suspended * * *."

Petitioner was released from confinement January 15, 1945. On January 16, 1945, he was given a pass permitting him to be absent from his station until January 17, 1945. He did not return. On March 10, 1945, at Cardiff, Wales, having allegedly committed several criminal violations he received injuries attempting to escape from arrest but was apprehended by civil officials and turned over to the United States Army at the Army Hospital, Rhyd, Lafar, Glamorgan, South Wales.

After due request charges were preferred, investigation made, and in due course a report recommended trial by general court-martial and that the previous suspension be revoked.

General Court-Martial Order No. 867, April 4, 1945, provided, "So much of the order published in General Court-Martial Orders No. 4 * * * 2 January 1945, as suspends execution of sentence to confinement and forfeiture of pay * * * is

vacated, and that part of said sentence will be carried into execution.

"The United Kingdom Base Guardhouse, Shepton Mallet, Somerset, England, is designated as the place of confinement."

The Judge Advocate examined the charge, accompanying papers including the report of investigation, and recommended trial by general court-martial. A general court-martial was convened at Newport, Monmouthshire, Wales, by Special Orders No. 94, Headquarters, United Kingdom Base Communications Zone, dated April 4, 1945. Petitioner was duly arraigned for violation of A.W. 61, 10 U.S.C.A. § 1533 (absent without leave); A.W. 93, 10 U.S.C.A. § 1565 (1) housebreaking (2) larceny); A.W. 96, 10 U.S.C.A. § 1568 (unlawfully wearing uniform of Second Lieutenant, United States Army). Petitioner represented by counsel plead not guilty. He was convicted of all charges and sentenced "To be dishonorably discharged from the service, to forfeit all pay and allowances due or to become due, and to be confined at hard labor at such place as the reviewing authority may direct for twenty (20) years."

The period of confinement was reduced by the reviewing authority to fifteen (15) years and as reduced was approved April 29, 1945, by the officer ordering the Court, as required by Article of War 46, 10 U.S.C.A. § 1517.

The United States Penitentiary, Lewisburg, Pennsylvania, was designated as the place of confinement. See a Manual for Courts-Martial United States Army 1928–1943 Edition. Section 90; Article of War 42, 10 U.S.C.A. § 1513; Article of War 45, 10 U.S.C.A. § 1516.

The record of the trial was duly examined by the Board of Review, Branch Office of the Judge Advocate General, European Theater of Operations, and found to be legally sufficient to support the findings and the sentence, which opinion was concurred in by the Assistant Judge Advocate General, European Theater of Operations, who authorized the promulgation of an order executing the sentence, all as required by Article of War 50½, as amended, 10 U.S.C.A. § 1522. Pursuant to such authori-.

zation General Court-Martial Orders No. 1155, Headquarters, United Kingdom Base Communications Zone, dated June 19, 1945, were duly promulgated, ordering the execution of the sentence.

It was necessary that the first sentence be served in someplace other than a penitentiary. See Article of War 42, 10 U.S.C.A. § 1513, the last proviso reading, "That persons sentenced to dishonorable discharge and to confinement not in a penitentiary shall be confined in the United States Disciplinary Barracks or elsewhere as the Secretary of War or the reviewing authority may direct, but not in a penitentiary."

From a study of the sentences of the respective courts-martial and of the authorities we are of the opinion that the sentence of fifteen (15) years was consecutive. Kirkman v. McClaughry, 8 Cir., 1908, 160 F. 436. "In civil court procedure the practice to incorporate in the judgment that the sentence is to be consecutively or concurrently served is unknown to military judicial procedure." Mosher v. Hudspeth, 10 Cir. 1941, 123 F.2d 401, 402, certiorari denied 316 U.S. 670, 62 S.Ct. 1039, 86 L. Ed. 1745.

The second sentence would therefore commence only after the expiration of the five (5) year sentence and service thereof or remission of the unserved portion by competent legal authority.

General Court-Martial Order No. 110, March 13, 1946, amended General Court-Martial Order No. 867, April 4, 1945, so as to designate the Midwestern Branch, United States Disciplinary Barracks, Fort Benjamin Harrison, Indiana, as the place of petitioner's confinement. By War Department Blue Seal Letter dated July 9, 1946, so much of the sentence to confinement published in General Court-Martial Order No. 297, dated August 19, 1944, as was in excess of two and three-fourths years was by the direction of the President remitted.

Respondent offered in evidence an exhibit WD AGO Form 53-57 1 November 1944 "Enlisted Record and Report of Separation Dishonorable Discharge" which contained a notation "Date of Separation 6 August 1946. Place of Separation Midw Br USDB Fort Benjamin Harrison Indiana * * * Selective Service data Registered—no * * * Reason and Authority for Separation—GCMO No. 297 Hqs Southern Base Sec. Com Zone ETO APO 519 dtd 19 Aug 1944."

Petitioner testified that on September 22, 1946, he was given a dishonorable discharge, a "Separation Qualification Record" and a paper in regard to Selective Service regulations. The Separation Qualification Record, WD AGO Form 100 1 Jul 1945, reads in part "This record of job assignments and special training received in the Army is furnished to the soldier when he leaves the service * * * the veteran may present this document to former employers, prospective employers, representatives of schools or colleges, or use it in any other way that may prove beneficial to him."

The Selective Service paper, dated September 22, 1946, reads in part, "Who was released from Confinement at this institution this date * * * the provisions of the Selective Service Regulations have been explained to me, I understand them, and I am to report to my local draft board immediately upon my arrival at my destination."

Petitioner returned to his home. Later he was confined in the Lackawanna County Jail at Scranton, Pennsylvania, for an offense against the criminal laws of the Commonwealth of Pennsylvania, from March 15, 1947, to September 24, 1947. Immediately upon his release he was taken into custody by a sergeant of the United States Army under orders of Headquarters United States Second Army and lodged in the United States Penitentiary, Lewisburg, Pennsylvania, under authority of General Court-Martial Order No. 1155, dated June 19, 1945, Headquarters, United Kingdom Base Communications Zone, European Theater of Operations, APO 413, United States Army.

In the answer to the rule Warden Hiatt of the Lewisburg Penitentiary states petitioner is being held in custody by authority of the United States as a general prisoner

under sentence of a court-martial. At the hearing the record clerk of the Penitentiary produced the commitment which was a duly authenticated copy of General Court-Martial Order No. 1155 and which requires petitioner to serve a sentence of fifteen (15) years.

▉ As stated, supra, upon his release from the Detention Barracks the prisoner should have been transferred immediately to the Penitentiary.

▉ " * * * if the prior imprisonment is shortened by a reversal or a pardon, the sentence of subsequent punishment then takes effect in the same mode as if the prior term had expired by the natural lapse of time." 24 C.J.S., Criminal Law, § 1581e, p. 108; Id., § 1996f, p. 1242; Blitz v. United States, 153 U.S. 308, 14 S.Ct. 924, 38 L.Ed. 725. The second sentence will be executed upon the expiration of the first. Mosher v. Hudspeth, supra.

"All transportation of prisoners shall be by such agent or agents of the Department of Justice as the Attorney General or his authorized representative shall from time to time nominate . * * * provided, That when the conviction is by * * * court-martial the transportation from the court to the place of confinement shall be by an agent or agents of the * * * Department of War * * *." Act of May 14, 1930, c. 274, § 8, 46 Stat. 327, 18 U.S.C.A. § 753g.

▉ Military prisoners held for punishment under previous sentences are subject to military law and trial by court-martial for offenses committed during such punishment. Mosher v. Hudspeth, supra; Kahn v. Anderson, Warden, 255 U.S. 1, 41 S.Ct. 224, 65 L.Ed. 469; Carter v. McClaughry, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236; In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636, 637; In re Bogart, 3 Fed.Cas. page 796, No. 1,596, 2 Sawy. 396, 1873; Ex parte Wildman, D.C.D.Kan. 1876, 29 Fed.Cas. page 1232, No. 17,653a; In re Craig, C.C.D.Kan.1895, 70 F. 969.

Carter v. McClaughry, supra, 183 U.S. 365, at page 383, 22 S.Ct. 181, at page 188, 46 L.Ed. 236, " * * * *jurisdiction* * * *included not only the power to hear and determine the case, but the power to execute and enforce the sentence of the law. Having been sentenced, his status was that of a military prisoner held by the authority of the United States as an offender against its laws.*

*"He was a military prisoner though he had ceased to be a soldier * * *."*

Kahn v. Anderson, supra, 255 U.S. 1, at pages 7, 8, 41 S.Ct. at page 225, 65 L.Ed. 469, "We are of opinion that even if their discharges as soldiers had resulted from the previous sentences which they were serving, it would be here immaterial, since as they remained military prisoners they were for that reason subject to military law * * *."

In re Bogart, supra, 3 Fed.Cas.No.1,596, at pages 799, 801, construing an Act of Congress court held the prisoner subject to court-martial jurisdiction after discharge for offense committed while in service. In Ex Parte Wildman, supra, after the dishonorable discharge was given, it was held that for an offense committed thereafter, as a prisoner the defendant was subject to court-martial jurisdiction. Accord in re Craig, supra.

Mosher v. Hunter, 10 Cir., 1944, 143 F. 2d 745, 746, "It is generally true * * * that courts-martial jurisdiction is coexistent and coterminous with military service and ceases upon discharge or other separation from such service (Sec. 10, Chap. 4, Manual of Courts-Martial, U. S. Army, 1928), and it does not extend to offenses committed against military law by those who are subsequently discharged or otherwise separated from such military service, unless courts-martial jurisdiction first attached before separation from the service, in which event jurisdiction continues until fully exhausted. * * *

"Furthermore, all persons under sentence adjudged by a court-martial are subject to military law (2nd Article of War, subsection (e), 10 U.S.C.A. § 1473 (e), and are therefore within the jurisdiction of courts-martial for offenses committed against military law. This is true although his military service ceased before jurisdiction attached and before trial and sentence. * * * It is thus clear that the date of the finality of his dishonorable discharge is immaterial * * *."

See A Manual for Courts-Martial, Id., supra, 1943 Ed. p. 8, 9, " * * * a dishonorable discharge terminates all subsisting enlistments and a soldier dishonorably discharged cannot be tried by court-martial for an offense committed during any such enlistment, except as provided in A. W. 94 [10 U.S.C.A. § 1566] and as stated in the next sub-paragraph.

"In certain cases, where the person's discharge or other separation does not interrupt his status as a person belonging to the general category of persons subject to military law, court-martial jurisdiction does not terminate * * *."

█ Under the circumstances here present we hold there is no merit in petitioner's contention that there was any loss of military jurisdiction because of the dishonorable discharge.

█ What if any effect did the error in releasing the petitioner prematurely have on the right of the Army to again take him into custody? See the quote from Carter v. McClaughry, supra. Jurisdiction includes not only the power to hear and determine but the power to execute and enforce the sentence of the law.

" * * * the principle that where jurisdiction has attached it cannot be divested by mere subsequent change of status has been applied as justifying * * * the execution of sentence after the lapse of many years, and the severance of all connection with the Army. Coleman v. Tennessee, 97 U.S. 509, 24 L.Ed. 1118." Id. In the Coleman case, the Supreme Court directed the defendant be surrendered to the Army to have a death sentence executed notwithstanding thirteen years had elapsed from the time of the court-martial, and with no evidence as to why the sentence had not previously been executed.

"According to the great weight of authority if there is no statute providing otherwise delay in taking the defendant into custody after conviction and sentence in no way releases the convict from the necessity of suffering the full penalty imposed by the sentence. Where the penalty is imprisonment the sentence of the law is to be satisfied only by the actual suffering of the imprisonment imposed unless remitted by death or some legal authority. Therefore the expiration of time without imprisonment is in no sense an execution of the sentence. Accordingly where the judgment and sentence is imprisonment for a certain term and from any cause the time elapses without the imprisonment being endured, it will still be a valid subsisting unexecuted judgment * * *." Note 72 A.L.R. 1271.

Mere lapse of time without imprisonment or other restraint contemplated by law does not constitute service of sentence. Anderson, Warden, etc., v. Corall, 1923, 263 U.S. 193, 44 S.Ct. 43, 68 L.Ed. 247.

"Mere lapse of time without * * * undergoing * * * imprisonment to which * * * sentenced did not constitute service of the sentence, which remained subject to be enforced, though process for its enforcement was not issued forthwith * * *. The sentence remained subject to be executed, notwithstanding the delay in executing it." United States ex rel. Mayer v. Loisel, 5 Cir., 1928, 25 F.2d 300, 301; Bernstein v. United States, 4 Cir., 1918, 254 F. 967, 3 A.L.R. 1569; Morris v. United States, 8 Cir., 1911, 185 F. 73; Lunsford v. Hudspeth, 10 Cir., 1942, 126 F. 2d 653, 655; "a sovereignty, or its courts, having possession of a person * * * cannot be deprived of the right to deal with such person * * * until its jurisdiction and remedy is exhausted." Id.

See also 24 C.J.S., Criminal Law, § 1995d (4), p. 1231; Davis v. State, 1925, 169 Ark. 932, 277 S.W. 5; Denham v. State, 1929, 180 Ark. 382, 21 S.W.2d 608; Stocks v. State, 171 Ark. 835, 286 S.W. 975; Ex parte Forbes, 108 Cal.App. 683, 292 P. 142; Ex parte Rice, 48 Okl.Cr. 28, 289 P. 360; Ex parte Williams, 1938, 63 Okl.Cr. 395, 75 P.2d 904, at page 909; In re Nottingham, 1928, 84 Colo. 123, 268 P. 587, 588; Egbert v. Tauer, 191 Ind. 547, 132 N.E. 370, 134 N.E. 199; State v. Abbott, 87 S.C. 466, 70 S.E. 6, 8, 33 L.R.A., N.S., 112, 122, Ann.Cas.1912B, 1189, 1192; Bennett v. Bradley, 1933, 216 Iowa 1267, 249 N.W. 651, 653; O'Dwyer v. Kelly, 133 Ga. 824, 67 S.E. 106; People ex rel. Kelly v. Ragen, 1946, 392 Ill. 423, 64 N.E.2d 872.

█ The cases almost uniformly support the rule to the effect that where a prison-

er is released on an illegal or void order of the court he may be retaken to serve out the sentence. See Hopkins v. North, 151 Md. 553, 135 A. 367, 49 A.L.R. 1303 and Note. Release through illegal order, treated as escape, Hopkins v. North, supra.

Ex parte Philbrook, 1931, 121 Neb. 421, 237 N.W. 391, (an unauthorized release by the warden; not entitled to credit for time spent outside prison); Schwamble v. Sheriff, 22 Pa. 18 (person released in error could again be placed in custody). Accord Leonard v. Rodda, 5 App.D.C. 256.

The government may recommit a prisoner following his release or discharge by mistake where sentence would not have expired had he remained in custody. 24 C.J.S., supra, Criminal Law, § 1999, p. 1246; White v. Pearlman, 10 Cir., 1930, 42 F.2d 788.

"The sentence of imprisonment of any person convicted of a crime in a court of the United States shall commence to run from the date on which such person is received at the penitentiary * * * for service of said sentence: Provided, That if any such person shal be committed * * * to await transportation to the place at which his sentence is to be served, the sentence of such person shall commence to run from the date on which he is received at such jail or other place of detention. No sentence shall prescribe any other method of computing the term." Act June 29, 1932, c. 310, § 1, 47 Stat. 381, 18 U.S.C.A. § 709a.

"The Constitution assigns to the legislature the power to enact laws defining crimes and fixing the degree and method of punishment; to the judiciary the power to try offenses under those laws and impose punishment within the limits and according to the methods therein provided; to the executive the power to relieve from the punishment so fixed by law and so judicially ascertained and imposed." Ex parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129, L.R.A.1917E, 1178, Ann. Cas.1917B, 355.

█ The civil courts cannot review the merits of cases tried in the military tribunals. On habeas corpus to obtain release from the sentence of a court-martial there can be no discharge if the court had jurisdiction to try the offender for the offense and the sentence was one which the court could under the law pronounce. Ex parte Mason, 105 U.S. 696, 26 L.Ed. 1213; United States ex rel. Feld v. Bullard, 2 Cir., 290 F. 704; 29 C.J. p. 93, 94, 39 C.J.S., Habeas Corpus, § 31; Sanford v. Robbins, 5 Cir., 1940, 115 F.2d 435; Grafton v. United States, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084, 11 Ann.Cas. 640.

█ On application for habeas corpus we are not concerned with the guilt or innocence of the petitioner. In re Yamashita, 327 U.S. 1, 66 S.Ct. 340, 90 L.Ed. 499; Ex parte Quirin, 317 U.S. 1, 63 S.Ct. 1, 87 L.Ed. 3.

As to the procedure in granting a rule to show cause, see Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830.

██ The function of habeas corpus is exhausted when it is ascertained that the agency under whose order the petitioner is being held had jurisdiction to act. If the writ is to issue, mere error in the proceeding which resulted in the detention is not sufficient. Eagles v. United States ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 317, 91 L.Ed. ——.

█ "Deprivation of petitioner of basic and fundamental procedural safeguards, and assertion of power to act beyond the authority granted the agency, and action without evidence to support its order, are familiar examples of the showing which is necessary." Id., Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Bridges v. Wixon, 326 U.S. 135, 149, 65 S.Ct. 1443, 89 L.Ed. 2103.

█ If it cannot be said that there were procedural irregularities of such a nature or magnitude as to render the hearing and we add the detention unfair the inquiry is at an end. See Hawk v. Olson, 326 U.S. 271, at page 274, 66 S.Ct. 116, 90 L.Ed. 61.

In habeas corpus proceedings the court cannot consider such matters as the fact that the judge in imposing sentence improperly considered a charge of crime of which the petitioner had been acquitted or that punishment was excessive in view of

the facts of the case. These are matters which must be availed of in the original cause. Upon habeas corpus the court examines only the power and authority of the court to act, not the correctness of its conclusion. The only question we consider here is whether the sentence imposed upon petitioner is justified by the record in the original cause. Widener v. Harris, 4 Cir., 60 F.2d 956.

The function of the writ of habeas corpus is to determine whether or not the prisoner is entitled to immediate release and not to secure the judicial decision of a question which even if determined in the prisoner's favor could not result in his immediate release. McNally v. Hill, Warden, 293 U.S. 131, 136, 55 S.Ct. 24, 79 L.Ed. 238; McNealy v. Johnston, 9 Cir., 100 F. 2d 280. The only judicial relief authorized is the discharge of the prisoner or admission to bail and that only when the detention is found to be unlawful. Without restraint of liberty which is unlawful the writ will not issue. Id.

From the foregoing, it is obvious that being subject to military jurisdiction the Army had the right to take the petitioner again into custody and lodge him at the place designated to serve out his sentence.

We find after a complete review of the court-martial record, having in mind the broad scope discussed in Johnson v. Zerbst, supra, and of the evidence before us, as well as the brief of petitioner's counsel, that there is no ground for granting the writ. The prayer of the petition will therefore be denied by an order filed this date.