## McFARLAND v. ZUPPANN.

### No. 233.

United States District Court
M. D. Pennsylvania.

Feb. 18, 1949.

John McIlhenny Smith and Mark T. Milnor, both of Harrisburg, Pa., for petitioner.

Charles W. Kalp, Asst. U. S. Atty., of Lewisburg, Pa., and Lt. Col. Donald P. MacArthur, Office of the Judge Advocate General, of Washington, D. C., for respondent.

FOLLMER, District Judge.

Petitioner was convicted by a General Court-Martial convened at Fort George G. Meade, Maryland, and sentenced October 17, 1946, for offenses, Violation Articles of War 63, 64, and 96, 10 U.S.C.A. §§ 1535, 1536, 1568, charged as having occurred on August 10, 1946. His contention is that the General Court-Martial did not have jurisdiction in that "he was not a legal bona fide member of the Armed Forces of the United States at said time and place, but was a private citizen of the United States."

Petitioner, while a flight officer (not a commissioned officer) in the United States Air Service, was convicted by a General Court-Martial in 1945 and the sentence included dishonorable discharge and confinement.[1] While he was a general prisoner at Fort Hancock, N. J., he made application for restoration to duty for the purpose of obtaining an honorable discharge.[2] The procedure for such restoration was contained in War Department Circular 108, Paragraph V, dated April 13, 1946,[3] which declared the policy of the War Department to encourage all physically, mentally, and

---

[1] Transcript of hearing December 21, 1948. (Testimony of petitioner, at page 7.)

[2] Transcript of hearing December 21, 1948, page 19. (See also page 8.)

[3] Respondent's Exhibit No. 10. (Pages 21, 22, and 23 of the exhibits.)

morally qualified general prisoners to earn honorable restoration to duty for service. It provided that general prisoners would no longer be transferred from United States disciplinary barracks to rehabilitation centers for training prior to restoration to duty, but training in disciplinary companies at disciplinary barracks was retained. War Department Circular 144 dated May 21, 1946, supplemented War Department Circular 108 and provided inter alia that such prisoners "* * * *may* be attached to the guard company of the institution where restored, granted a 15-day furlough, and required to return to that organization prior to assignment." (Emphasis supplied.)

On June 27, 1946, the Adjutant General's Office of the War Department, Washington, D. C., by letter, authorized the enlistment of the petitioner.[4] During the various stages in the completion of the Enlistment Record the petitioner signed a Declaration of Applicant,[5] and under date of July 1, 1946, signed the Oath with the certificate of the recruiting officer attached.[6] The complete record was not all made or typed at one time. The record itself shows that the medical examination was made on May 23, 1946, and the entries of that part of the record were made at a time different than other parts of the record.[7] His signature on various portions were not all made at the same time, as is evidenced by the appearance of the signatures; for example the full signature on page (1) thereof, and the originally signed initials D. M. in the signature on the oath. The enlistment became effective on July 1, 1946, which is the date entered on Section 1 ("Enlistment Or Induction Record") and Section 9 ("Administrative") of his Service Record.[8]

While at Fort Hancock, N. J., and prior to his assignment to an Army unit, he was granted and accepted, as a soldier, an Army furlough from July 2 to July 16, 1946, and returned to Fort Hancock, N. J., on July 17, 1946,[9] as provided in War Department Circular 144. He was paid on July 31, 1946, for rations from July 2 to July 16, 1946.[10] On July 17, 1946, he was assigned to Fort Meade, Maryland.[11] He left Fort Hancock, N. J., his fare was paid by the Army, and as a soldier in the U. S. Army he reported at Ford Meade, Maryland.[12] While at Fort Meade he signed, accepted and used passes as a soldier.[13] While there he was assigned a bunk, and ate and slept with the other soldiers.[14] He was a soldier in the United States Army on August 10, 1946, when the offense occurred for which he is now imprisoned, and the General Court-Martial had jurisdiction.

Petitioner's contention was that he had not reenlisted at Fort Hancock; that he had not signed an enlistment record on July 1; that he had signed an enlistment record as of June 1, 1946, which was destroyed when some other order came out to the effect that a former officer could not be restored without the "personal review of the case" by "the Secretary of War", and that thereupon he was returned from an "Honor Company" to prison. No such order has been produced and there is no reason to believe that such an order existed. Nor is it material whether he was in an "Honor Company" or in some other type of confinement. He was at all such times, in any event, a prisoner within the jurisdiction of the disciplinary barracks. He remained a prisoner until he re-entered the Army as a soldier by re-enlistment. He at no time occupied the status of a civilian. Had his

[4] Respondent's Exhibit No. 6. (Page 11 of the exhibits.)

[5] Respondent's Exhibit No. 3. (Page 1 of the exhibits.)

[6] Respondent's Exhibit No. 3. (Page 5 of the exhibits.)

[7] Respondent's Exhibit No. 3. (Pages 2 and 3 of the exhibits.)

[8] Petitioner's Exhibit No. 1. (Pages 25 to 39 incl. of the exhibits.)

[9] Petitioner's Exhibit No. 1, Section 17. (Page 30 of the exhibits.)

[10] Petitioner's Exhibit No. 1, Section 23. (Page 34 of the exhibits.)

[11] Respondent's Exhibit No. 9, Special Orders No. 12. (Page 18 of the exhibits.)

[12] Petitioner's Exhibit No. 1, Section 24. (Page 35 of the exhibits.)

[13] Respondent's Exhibits No. 4 and 5. (Pages 7 to 10 incl. of the exhibits.)

[14] Transcript of hearing December 21, 1948. (Testimony of petitioner, at page 12.)

re-enlistment not become effective, he would on August 10, 1946, when the violation occurred, have remained under the jurisdiction of the Army as a prisoner under Article of War 2, 10 U.S.C.A. § 1473.

 The Army authorities at the disciplinary barracks had authority to release him for one purpose only, namely re-enlistment, and if he was released, without such re-enlistment, it was unauthorized and void. It did not destroy their jurisdiction.[15] Whether or not he signed the oath on the specific date in the Enlistment Record, namely, July 1, 1946, is immaterial. He did sign an application for enlistment, took the physical examination, proceeded through the necessary steps, and finally did execute an Oath of Enlistment, and thereafter personally had no doubts that he had enlisted and thereupon accepted the various benefits thereof. Moreover, considering all that occurred and all that was done by petitioner, even assuming some irregularity in the enlistment proceedings, there would nevertheless be a constructive enlistment[16] which is recognized by the United States Army.[17] He was, under any view of the facts, at no time here involved out of the jurisdiction of the Army.

The Petition for Writ of Habeas Corpus is denied and the Rule to Show Cause dismissed.

---

[15] O'Malley v. Hiatt, Warden, D.C.M. D.Pa., 74 F.Supp. 44.

[16] Sanford v. Callan, 5 Cir., 148 F.2d 376, 377, certiorari denied 326 U.S. 679, 66 S.Ct. 6, 90 L.Ed. 397; In re Berue, D.C.S.D.Ohio, 54 F.Supp. 252, 256.

[17] Digest of Opinions of The Judge Advocate General of the Army, 1912–1940, Section 467 at page 384.

Bulletin of The Judge Advocate General of the Army, August 1942, Volume 1 Number 3, Section 467, at page 165.